**[J-52-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 10 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 2820 EDA 2015 dated July |
| | : | 25, 2016, reconsideration denied |
| v. | : | September 22, 2016, Reversing the |
| | : | PCRA Order, Vacating the Judgment of |
| | : | Sentence and remanding for |
| PHILLIP DIMATTEO, | : | resentencing of the Chester County |
| | : | Court of Common Pleas, Criminal |
| Appellee | : | Division, dated August 24, 2015 at No. |
| | : | CP-15-CR-4033-2011. |
| | : | |
| | : | SUBMITTED: June 16, 2017 |

## OPINION

**JUSTICE MUNDY**                         **DECIDED: January 18, 2018**

We granted review in this case to assess what relief, if any, a criminal defendant is entitled to when he raises an illegal sentencing challenge premised on *Alleyne v. United States*, 133 S.Ct. 2151 (2013) in a timely petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, when, at the time *Alleyne* was decided, the defendant's judgment of sentence was not yet final.

I.

On November 20, 2012, Appellee, Phillip DiMatteo, entered into an open guilty plea to 56 counts[1] of possession with intent to deliver (PWID) and one count each of

---

[1] DiMatteo pleaded guilty to charges at two different docket numbers: one count of PWID at number CP-15-CR-0004681-2010; the balance of the charges were at docket number CP-15-CR-0004033-2011.

criminal conspiracy and corrupt organizations.[2]  The charges stemmed from a drug operation in which DiMatteo and fourteen other individuals were involved in trafficking cocaine.  Relevant to the issue, the Commonwealth sought imposition of the mandatory minimum sentence under 18 Pa.C.S. § 7508.  Section 7508 prescribes various mandatory minimum sentences for certain violations of The Controlled Substance, Drug, Device and Cosmetic Act, including PWID, predicated on the weight and classification of the controlled substance.  *See id.*  Notably, Section 7508 specifies that its provisions "shall not be an element of the crime[,]" the application of the sentence "shall be determined at sentencing[,]" and the factual determinations necessary to impose the sentence are to be found by the sentencing court by a preponderance of the evidence.  18 Pa.C.S. § 7508(b).  On February 6, 2013, the court imposed mandatory minimum sentences pursuant to Section 7508 on 55 counts of PWID.[3]  N.T., 2/6/13, at 50-52.  The sentencing court structured its sentence, by ordering certain sentences to run concurrently and others consecutively, such that DiMatteo faced an aggregate sentence of fifteen to thirty years' imprisonment.[4]  *Id.* at 54.

DiMatteo timely sought reconsideration of his sentence from the sentencing court.  The court denied his motion on June 12, 2013.  Five days following the sentencing court's denial of DiMatteo's motion for reconsideration, on June 17, 2013,

---

[2] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 903(c), 5111(a)(1).

[3]  The sentencing court sentenced DiMatteo to one to two years' imprisonment on the single count of PWID at docket number CP-15-CR-0004681-2010.  On the 55 counts of PWID, the court imposed seven to fourteen-year mandatory minimum sentences on two counts; five to ten-year mandatory minimum sentences on thirty-five counts; and three to five-year minimum sentences on eighteen counts.  *See* N.T., 2/6/13, at  50-52.

[4]  Additionally, the court sentenced DiMatteo to four to six years' imprisonment for conspiracy and one to two years' imprisonment for corrupt organizations.  *See* N.T., 2/6/13, 53.

the United States Supreme Court issued its decision in *Alleyne. Alleyne* held that any fact which, by law, increases the mandatory minimum sentence for a crime must be: (1) treated as an element of the offense, as opposed to a sentencing factor; (2) submitted to the jury; and (3) found beyond a reasonable doubt. *Alleyne*, 133 S.Ct. at 2163.

DiMatteo did not file a notice of appeal to the Superior Court. On May 22, 2014, DiMatteo filed a timely, *pro se* PCRA petition in which he argued post-sentence counsel[5] was ineffective for failure to investigate a change in the law which prohibits the imposition of the mandatory minimum sentences under which he was sentenced and for counsel's failure to file a direct appeal.[6] DiMatteo's PCRA Pet., 5/22/14, at 3. Counsel was appointed; however, he believed that the issues raised were without merit and filed a petition to withdraw.[7] The PCRA court determined the allegation that post-sentence counsel failed to file a direct appeal presented a genuine issue of material fact and held a hearing on May 12, 2015. On August 25, 2015, the PCRA court denied the petition.

DiMatteo appealed the denial of his petition to the Superior Court challenging the PCRA court's denial of both of his issues. In an unpublished memorandum opinion, the Superior Court vacated DiMatteo's judgment of sentence and remanded for

---

[5] DiMatteo was represented by Evan Kelly, Esquire, during his plea proceedings. Attorney Kelly filed a motion for reconsideration of sentencing on behalf of DiMatteo. DiMatteo received a court-appointed conflict attorney to represent him during the appellate process; it is the direct appeal counsel's stewardship only that DiMatteo challenged.

[6] DiMatteo filed a motion for modification of sentence *nunc pro tunc* on January 10, 2014. The Commonwealth filed a response relying on Pa.Crim.P. 720, and argued the court no longer had jurisdiction to entertain any untimely post-sentence motion. *See* Commonwealth Answer, 2/10/14, at 1-4. It appears the court dismissed the motion on this basis, rather than treating this filing as a first PCRA petition and appointing counsel. *See* Trial Ct. Order, 2/24/14 (dismissing motion).

[7] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

resentencing. The intermediate court limited its discussion to whether DiMatteo was serving an illegal sentence under *Alleyne* without addressing the ineffective assistance of counsel claim. It noted that decisions of the Superior Court have clarified that the holding in *Alleyne* rendered sentences imposed pursuant to Section 7508 unconstitutional. *Commonwealth v. DiMatteo*, 2016 WL 5341100 at * 2 (Pa. Super. July 25, 2016). The court found its decision in *Commonwealth v. Ruiz*, 131 A.3d 54 (Pa. Super. 2015), to be dispositive. The court explained that in *Ruiz,* a panel of the Superior Court "held that where a petitioner currently serving a mandatory minimum sentence has filed a timely PCRA petition and his judgment of sentence was not final at the time *Alleyne* was decided, his sentence is illegal and he is entitled to a new sentence." *DiMatteo*, 2016 WL 5341100 at *2. Accordingly, it remanded for resentencing. Of significance, six days prior to the Superior Court's ruling on DiMatteo's claim, this Court decided *Commonwealth v. Washington*, 142 A.3d 810 (Pa. 2016), wherein we held "that *Alleyne* does not apply retroactively to cases pending on collateral review[.]" *Washington*, 142 A.3d at 820.

We granted the Commonwealth's petition for allowance of appeal to consider if the Superior Court's decision is in conflict with this Court's decision in *Washington*, and, in the event DiMatteo is entitled to relief, whether the Superior Court ordered the appropriate remedy. *See Commonwealth v. DiMatteo*, 166 A.3d 1229 (Pa. 2017) (per curiam). Our scope of review over the legal questions presented is plenary. *Washington*, 142 A.3d at 814.

We find it beneficial to engage in a brief recitation of the jurisprudential landscape informing this decision. As noted, the Supreme Court rendered the *Alleyne* decision on June 17, 2013, and held that sentencing schemes which predicated the imposition of a mandatory minimum sentence on a fact found by the sentencing court, by a

preponderance of the evidence, were unconstitutional. The decision was an extension of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held any fact that increases the punishment for a crime beyond the statutorily prescribed maximum must be submitted to the jury and found beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Initially, the United States Supreme Court declined to extend the logic of *Apprendi* and upheld the constitutionality of mandatory minimum sentencing statutes that mandated a judge to find the operative sentencing fact by a preponderance of the evidence. *See Harris v. United States*, 536 U.S. 545, 567-68 (2002) (explaining that *Apprendi* only prohibited judicial power to extend the mandatory maximum sentence beyond what was authorized by statute and reaffirming its pre-*Apprendi* decision, *McMillian v. Pennsylvania*, 477 U.S. 79 (1986)). However, in *Alleyne*, the Supreme Court reconsidered and expressly overruled its decision in *Harris*. *See Alleyne*, 133 S.Ct. at 2163. The effect of the decision in this Commonwealth was the invalidation of a number of similarly-patterned mandatory minimum sentencing statutes as unconstitutional, which were challenged on direct appeal. *See, e.g. Commonwealth v. Newman*, 99 A.3d 86, 98-102 (Pa. Super 2014) (*en banc*) (declaring 42 Pa.C.S. § 9712.1 unconstitutional because it increased the penalty for certain drug offenses when a judge finds, by a preponderance of the evidence, that at the time of the offense, the offender was in possession of a firearm).[8]

---

[8] However, the *Newman* decision came after the intermediate court equivocated on whether these mandatory minimum statutes could be applied constitutionally in Pennsylvania. *See, e.g. Commonwealth v. Munday*, 78 A.3d 661, 666 (Pa. Super. 2013) (finding 42 Pa.C.S. § 9712.1 unconstitutional as applied to Munday, but declining to conclude the sentencing statute was void on its face); *Commonwealth v. Matteson*, 96 A.3d 1064 ,1066 (Pa.Super. 2014) (finding no violation of *Alleyne* despite the application of the mandatory sentencing statute at 42 Pa.C.S. § 9718 because the necessary fact for the judge to impose the sentence was an element of the underlying offense; thus, "the jury specifically found the element[.]").

This Court answered the question of whether these statutes could withstand constitutional scrutiny in the negative in *Commonwealth v. Hopkins*, 117 A.3d 247, 259-60 (Pa. 2015) (holding 42 Pa.C.S. § 6317 unconstitutional because it allowed a judge to increase a sentence for conviction of drug offenses based on the occurrence of the offense within 1,000 feet of a school and that such legislatively mandated fact-finding could not be severed), and *Commonwealth v. Wolfe*, 140 A.3d 651, 660-61 (Pa. 2016) (holding 42 Pa.C.S. § 9718 unconstitutional notwithstanding that the operative, mandatory sentencing fact was an element of the underlying offense).[9]

Although this Court definitively concluded that mandatory sentencing statutes patterned in this manner were unconstitutional, questions lingered over whether such challenges should be regarded as illegal sentencing claims subject to *sua sponte* correction on direct appeal by the courts notwithstanding a failure to raise and/or preserve the claim. In *Commonwealth v. Barnes*, 151 A.3d 121 (Pa. 2016), this Court squarely addressed the issue. Barnes was sentenced to a mandatory minimum term of five years' imprisonment pursuant to 42 Pa.C.S. § 9712.1 based on his conviction for PWID and based on a judicial finding that drugs were in close proximity to a firearm. *See Barnes*, 151 A.3d at 122. Barnes filed his notice of appeal to the Superior Court on June 14, 2013 raising two challenges to the sufficiency of the evidence. Four days after

---

[9] We note that although the imposition of mandatory minimum sentences under statutes that require a predicate fact to be found by a judge by a preponderance of the evidence at sentencing have been declared constitutionally defective by this Court's decisions in *Hopkins* and *Wolfe*, this Court is currently considering whether a mandatory sentence may be imposed pursuant to 42 Pa.C.S. 9718(a)(3) where the basis for the sentence is the mere conviction of the underlying offense. *See Commonwealth v. Resto*, 144 A.3d 93 (2016) (per curiam). The answer to whether this discrete application of a mandatory minimum sentence can withstand constitutional scrutiny does not bear on the instant case because Section 7508 indeed requires an additional aggravating fact to be found in order to impose the sentence.

he filed his notice of appeal, the Supreme Court announced its decision in *Alleyne*.  *See id.* at 123.    The Superior Court affirmed the judgment of sentence, and *sua sponte* addressed and dismissed the notion that Barnes' sentence violated *Alleyne*.  *See id.* (explaining that the Superior Court relied on its pre-*Newman* decision in *Commonwealth v. Watley*, 81 A.3d 108, 118-21 (Pa. Super. 2013) (*en banc*), which held no *Alleyne* violation occurs by the imposition of Section § 9712.1 where a jury convicts of PWID contemporaneously with a possessory firearm charge.).  This Court accepted review to address whether the Superior Court erred in its treatment of the *Alleyne* issue, and whether the failure of Barnes to raise the issue precluded relief.  A majority of this Court ultimately found that *Alleyne* challenges on direct appeal implicate the legality of the sentence and are not subject to traditional rules of issue preservation.

> As that sentencing provision has now been rendered unconstitutional on its face by *Hopkins* and *Wolfe*, it is as if that statutory authority never existed.  *See Wolfe*, 140 A.3d at 661 (quoting 16 C.J.S. Constitutional Law § 265 (2016)) ("[A]n unconstitutional, non-severable statute is 'not a law, has no existence, is a nullity, or has no force or effect or is inoperative.' ").    Accordingly, we hereby adopt the lead opinion in [*Commonwealth v.*] *Foster* [17 A.3d 332 (Pa. 2011) (plurality)] and definitively hold that where the mandatory minimum sentencing authority on which the sentencing court relied is rendered void on its face, and no separate mandatory authority supported the sentence, any sentence entered under such purported authority is an illegal sentence for issue preservation purposes on direct appeal. Thus, Appellant is entitled to resentencing notwithstanding his failure to preserve his issue prior to seeking our review.

*Barnes*, 151 A.3d at 127.  The *Barnes* Court made a point to note that this case involved only the question of whether a defendant is entitled to relief on direct appeal from an unconstitutional sentence under *Alleyne* notwithstanding his or her failure to raise the issue and not a scenario where *Alleyne* relief is sought via collateral attack. *See id.*, n. 6 (observing the Commonwealth conceded *Alleyne* announced a new rule of constitutional law that should be applied on direct appeal if it was preserved or a non-

waivable claim, but explaining "retroactive application of *Alleyne* on direct appeal differs from its application during collateral review, as we recently explained in" *Washington*.).

In a concurrence in which this author joined, Chief Justice Saylor agreed with the "specific holding that sentences violative of *Alleyne* . . . are illegal sentences, alleviating the requirement for issue preservation." *Id.* at 127 (Saylor, C.J., concurring). However, Chief Justice Saylor did not support expressly adopting the test advanced in *Foster*, voicing concerns that such an approach is over-broad. *See id.* Like the majority, the concurrence made a point to differentiate the availability of relief based on when, procedurally-speaking, the relief was sought. *See id.*, n. 1 ("this understanding does not apply to cases that have reached the post-conviction stage, since the determination of whether final judgments of sentence are illegal depends upon whether *Alleyne* is retroactive to cases pending on post-conviction review" and according to this Court's decision in *Washington*, it is not retroactive).

As alluded, while the courts were addressing the effect of *Alleyne* on sentences, challenged or not, on direct appeal, defendants sought to have *Alleyne* afford them relief via this Commonwealth's sole means of obtaining collateral relief, filing a petition under the PCRA. *See* 42 Pa.C.S. § 9542. In *Commonwealth v. Ruiz,* 131 A.3d 54 (Pa. Super. 2015), the Superior Court addressed a scenario wherein Ruiz sought relief in a similar procedural posture as the instant case. Ruiz received a mandatory sentence pursuant to Section 9712.1 on June 5, 2013, and did not file a post-sentence motion or a direct appeal. *Ruiz,* 131 A.3d at 56. On June 2, 2014, Ruiz timely filed a petition pursuant to the PCRA challenging the legality of his sentence in light of *Alleyne*. *Id.* The court was guided by its recent decisions regarding *Alleyne* in both the direct appeal and collateral stages.

> We note the *Newman* Court instructed that *Alleyne* applied
> only to cases pending on **direct review** as of June [1]7,

2013, the date of the *Alleyne* decision. *See Newman*, 99 A.3d at 90.

It is also settled that *Alleyne* does **not** invalidate a mandatory minimum sentence when presented in an untimely PCRA petition. *See Commonwealth v. Miller*, 102 A.3d 988 (Pa. Super. 2014). In concluding *Alleyne* does not satisfy this new retroactive constitutional right exception to the PCRA's one year time bar, 42 Pa.C.S. § 9545(b)(1)(iii), the *Miller* Court explained:

> Even assuming *Alleyne* did announce a new constitutional right, neither our Supreme Court, nor the United States Supreme Court has held that *Alleyne* is to be applied retroactively to cases **in which the judgment of sentence had become final**. This is fatal to Appellant's argument regarding the PCRA time-bar. This Court has recognized that a new rule of constitutional law is applied retroactively to cases on collateral review only if the United States Supreme Court or our Supreme Court specifically holds it to be retroactively applicable to those cases.

*Id.* at 995 (citations omitted) (emphasis supplied). Furthermore, this Court also recently declined to give *Alleyne* retroactive effect to cases on **timely** collateral review when the defendant's judgment of sentence was finalized before *Alleyne* was decided. *See Commonwealth v. Riggle*, 119 A.3d 1058 (Pa. Super. 2015).

*Ruiz*, 131 A.3d at 58-59. The court found the procedural posture of the case critical to its decision to apply *Alleyne* to Ruiz. *See id.* at 59. Specifically, unlike *Miller* in which the petitioner filed an untimely petition, and unlike *Riggle*, in which the petitioner filed a timely petition but whose judgment of sentence was final as of June 17, 2013, Ruiz's judgment of sentence was not yet final at the time the decision in *Alleyne* was rendered *and* he presented his claim in a timely petition for post conviction relief. *Id.* Highlighting that *Newman* regarded *Alleyne* challenges as non-waivable challenges to the legality of

the sentence,[10] the court concluded that such a claim may be raised in either a direct appeal or a timely PCRA petition. *Id.* at 60. Accordingly, the court concluded Ruiz was entitled to resentencing.

Several months after the Superior Court rendered that exception, this Court decided *Washington*. Washington was sentenced to numerous mandatory minimum terms of imprisonment under the authority of 42. Pa.C.S. § 9712. *Washington*, 142 A.3d at 811. His judgment of sentence became final in 2006, and he timely filed a PCRA petition that year. The PCRA court dismissed the petition. However, due to several procedural irregularities, the appeal from that dismissal was delayed. The Superior Court filed its decision on the appeal in 2015. In addressing the dismissal of the petition, the Superior Court discussed *Alleyne sua sponte*, but concluded that Washington was not entitled to relief based thereon. *See Commonwealth v. Washington*, 2015 WL 7203054 (Pa. Super. May 12, 2015) at *7; *see id.* at *11-14 (Bowes., J. concurring and dissenting).

This Court addressed the applicability of *Alleyne* relief in the context of a timely PCRA petition where defendant's judgment of sentence was final prior to the decision in *Alleyne*. The appropriate framework under which courts consider retroactive application of new constitutional rules to final judgments of sentence is derived from the United States Supreme Court plurality opinion in *Teague v. Lane*, 489 U.S. 288 (1989). Under *Teague*, retroactive application of new rules of constitutional law is afforded to two classes of rules: substantive rules, i.e., rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe[;]" and certain procedural rules which are "implicit in the concept of ordered liberty[,]"

---

[10] A legal conclusion vindicated by this Court's decision in *Barnes*.

otherwise referred to as "watershed rules of criminal procedure." *Teague*, 489 U.S. at 311.

We explained that *Alleyne* announced a new rule of federal constitutional law, but that does not necessarily "render final, pre-existing sentences illegal." *Washington*, 142 A.3d at 811. We concluded that the rule in *Alleyne* could not be deemed substantive because it "neither alters the range of conduct or the class of persons punishable by law." *Washington*, 142 A.3d at 818 (citing *Montgomery v. Louisiana*, 136 S.Ct. 718, 729-30 (2016)). We further determined that it was not a "watershed" rule of procedure, as it remains lawful, following *Alleyne*, for judges to increase sentences, in the exercise of their discretion, "based on facts that they find by a preponderance of the evidence." *Id.* at 819. Declining to adopt a state-level rule for retroactivity analysis in *Washington*, we observed that *Teague* remained the default approach to the issue of retrospective application of new rules of constitutional law in the collateral attack posture. *See id.* at 819. Thus, we held that Washington was not entitled to relief based on *Alleyne*. *Id.* at 820.

## II.

With the above background in mind, we turn to the question of whether DiMatteo was entitled to relief under *Alleyne*, or whether, as the Commonwealth contends, such relief is barred by our decision in *Washington*.

The Commonwealth begins its argument by highlighting that the United States Supreme Court did not initially invalidate mandatory minimum sentences based on an extension of its decision in *Apprendi*, by noting that it expressly permitted such schemes to stand in *Harris*. Commonwealth's Brief at 13. It then argues *Alleyne* is not retroactive to cases on collateral review, and cites to a number of federal cases to

support that proposition. *Id.* at 14-15.[11] In particular, it quotes the reasoning in *United States v. Reyes*, 755 F.3d 210 (3d Cir. 2014), in which the Third Circuit concluded that *Alleyne* announced neither a substantive rule nor a watershed rule of criminal procedure; therefore it did not provide "Reyes with any basis for relief because the Supreme Court has not chosen to apply *Alleyne*'s new rule retroactively to cases on collateral review." *See* Commonwealth's Brief at 14 (citing *Reyes*, 755 A. 3d at 212-13).

The Commonwealth continues that the Superior Court has held that *Alleyne* is not retroactive to cases on collateral review in *Miller* and *Riggle*. Commonwealth's Brief at 16. The Commonwealth next acknowledges that this Court held in *Barnes* that mandatory minimum sentences imposed under the procedure found unconstitutional under *Alleyne*, are illegal and not subject to traditional waiver principles. However, it emphasizes that the *Barnes* decision clearly limited its holding to cases on direct appeal and the application of *Alleyne* differed in the post conviction context. The Commonwealth turns to our decision in *Washington* and observes that this Court "agreed" with the analysis of Judge Bowes' concurring and dissenting opinion at the intermediate court level that Washington was foreclosed from relief based on the retroactivity analysis under *Teague*. *Id.* at 18-19. It then notes that subsequent to our decision in *Washington,* in *Commonwealth v. Ciccone*, 152 A.3d 1004 (Pa. Super. 2016) (*en banc*), Judge Bowes, writing for the Superior Court, "expanded" on our reasoning in *Washington*. *See* Commonwealth's Brief at 19.

---

[11] *See Walker v. United States*, 810 F.3d 568 (8th Cir. 2016); *Crayton v. United States*, 799 F.3d 623 (7th Cir. 2015); *United States v. Olvera*, 775 F.3d 726 (5th Cir. 2015); *Butterworth v. United States*, 775 F.3d 459 (7th Circ. 2015); *Hughes v. United States*, 770 F.3d 814 (9th Cir. 2014); *United States v. Hoon*, 762 F.3d 1172 (10th Cir. 2014); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283 (11th Cir. 2014); *United States v. Winkelman*, 746 F.3d 134 (3d Cir. 2014); *United States v. Redd*, 735 F.3d 88 (2d Cir. 2013); *In re Payne*, 733 F.3d 875, 876 (7th Cir. 2013).

Briefly, Ciccone was sentenced to a mandatory minimum pursuant to 18 Pa.C.S. § 7508, the same sentencing statute at issue herein, and his judgment of sentence became final in 2012. *See Ciccone*, 152 A.3d at 1005. Ciccone did not file a direct appeal; however, while his timely-filed PCRA petition was being litigated, *Alleyne* was decided. He filed an amended petition in which he claimed his sentence was illegal under *Alleyne*. *Id.* The PCRA court denied the petition. The Superior Court initially granted relief, but withdrew its opinion following our decision in *Washington*. It concluded, on *Washington*'s authority, that *Alleyne* was not applicable to Ciccone in the collateral proceeding. *Id.* at 1007. The *Ciccone* court also rejected the notion that the mandatory sentencing statute was void *ab initio*. *See id.* It reasoned that it could not be void from inception because at the time Ciccone was sentenced, *Harris* was the federal constitutional authority on mandatory minimum sentences and that decision upheld their application. The court explained that "*Alleyne* overruled *Harris* . . . and rendered a constitutional statute unconstitutional as of the date that *Alleyne* was disseminated." *Id.* at 1009.

The Commonwealth posits, based on the reasoning of *Ciccone*, that there is no *Alleyne* issue in the instant case because at the time of DiMatteo's sentencing, *Alleyne* had not been decided and "for a period of time thereafter, the Superior Court and other authority" upheld certain mandatory minimum sentences. *See* Commonwealth's Brief at 21-26. It concludes that it was not until *Newman*, decided on August 20, 2014, did an appellate court rule that the mandatory minimum sentencing schemes were unconstitutional under *Alleyne*, and further, that it was not until *Hopkins*, decided on

June 15, 2015, "that the ultimate effect of *Alleyne* on certain Pennsylvania mandatory minimums was finally determined."[12] *Id.* at 26.

In advocating for affirmance, DiMatteo first notes that unconstitutionality of Section 7508 is not disputed by the Commonwealth. He continues that under the PCRA, courts have jurisdiction to afford relief to non-waivable sentencing claims raised in a timely-filed PCRA petition. DiMatteo's Brief at 9 (citing *Commonwealth v. Fahy*, 737 A.2d 214 (Pa. 1999)). Acknowledging this Court's decision in *Washington*, DiMatteo argues his case is legally distinguishable. DiMatteo posits that pursuant to *Teague* and its progeny, a defendant is entitled to application of the new law if, at the time it is announced, his or her judgment of sentence is not yet final. Concomitantly, the retroactivity analysis under *Teague*, is only necessary when assessing whether to retroactively apply new rules of constitutional laws to defendants whose judgments of sentence were final as of the date of the decision. *See* DiMatteo's Brief at 11-12 (citing *Welch v. United States*, 136 S.Ct. 1257, 1264 (2016); *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004); *Montgomery v. Louisiana*, 136 S.Ct. 718, 719 (2016)). DiMatteo also observes that it is well-established that judgments of sentence are not considered final until appellate proceedings have been exhausted or the time for taking an appeal has expired. DiMatteo's Brief at 12. He reiterates that in his case, his motion for modification of sentence was denied on June 12, 2013; five days later, the Supreme Court issued *Alleyne*; and his judgment of sentence was not final until the expiration of time for filing a direct appeal, i.e., July 12, 2013. *Id.*; *accord* 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 903.

III.

---

[12] The Commonwealth also notes that neither *Newman* nor *Hopkins* were unanimous decisions.

It is uncontested that Section 7508 is an unconstitutional and illegal sentencing statute in light of *Alleyne* and its Pennsylvania progeny.  *See Wolfe*, 140 A.3d at 660-61*; Barnes*, 151 A.3d at 126-27*.*  The question we granted allocatur to consider is whether our decision in *Washington* bars one serving an illegal sentence from relief when such relief is sought in a timely PCRA petition and the judgment of sentence was not final when *Alleyne* was announced.  We hold it does not.

First, *Washington* addressed the retroactivity of *Alleyne* in the context of an already-final judgment of sentence.  Indeed, in *Teague*, the question before the Court was whether the petitioner could receive the benefit of the Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding the Equal Protection Clause forbids the prosecution from striking jurors based solely on race), which had been decided during the pendency of his collateral challenge.[13]  *Teague*, 489 U.S. at 1066-67.   Before delineating the framework that subsequently became the default test for determining whether a rule applies to final judgments on collateral attack, the *Teague* Court explained Justice Harlan's basic view on applying new rules of law in a collateral proceeding.

> Given the "broad scope of constitutional issues cognizable on habeas," Justice Harlan argues that it is "sounder, in adjudicating habeas petitioners, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretations." [*Mackey v. U.S.*, 401 U.S. 667, 682-83 (1971), (Harlan, J. concurring and dissenting)].

---

[13] In *Teague*, the petitioner's judgment of sentence had become final approximately two and one-half years prior to the *Batson* decision.

*Teague*, 489 U.S. at 306. The High Court most recently reiterated that "[u]nder *Teague,* as a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final **before the new rules are announced**." *Welch v. United States*, 136 S. Ct. 1257, 1264, 194 L. Ed. 2d 387 (2016) (emphasis added). Moreover, the cases cited by the Commonwealth holding that *Alleyne* does not apply retroactively to petitioners on collateral review, *see infra* n. 10, involve the application of *Alleyne* to judgments of sentence that were final as of June 17, 2013. Although *Washington* may be read to suggest that it forecloses *Alleyne*-based relief on collateral attack, *see Washington,* 142 A.3d at 820 ("*Alleyne* does not apply retroactively to cases pending on collateral review"), its true holding is that *Alleyne* does not apply to cases where the judgment of sentence was final prior to *Alleyne*, because if the judgment of sentence was not final, then its application is not truly "retroactive." *See Washington*, 142 A.3d at 815.

The Commonwealth's attempt to support its argument with the reasoning in *Ciccone*, is misplaced. The Commonwealth reasons that because DiMatteo was sentenced prior to *Alleyne* and the appellate court decisions of this Commonwealth interpreting it, his sentence could not be illegal. However, *Ciccone* does not stand for such a proposition. Indeed, although *Ciccone* declined to conclude that the mandatory minimum statutes were void *ab initio*, it clearly noted that the illegality of these sentences as a result of the *Alleyne* decision is recognized as of the date *Alleyne* was decided. *See Ciccone*, 152 A.3d at 1009.

Turning to the statute under which DiMatteo seeks relief, we observe the courts of this Commonwealth are endowed with authority to grant relief on collateral review pursuant to the PCRA statute.

> This subchapter provides for an action by which persons
> convicted of crimes they did not commit and persons serving

**illegal sentences may obtain collateral relief.** The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction. Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.

42 Pa.C.S. § 9542 (emphasis added).

We are cognizant that Section 9543 specifically delineates the availability of relief and includes relief from "[t]he imposition of a sentence greater than the lawful maximum[;]" or "[a] proceeding in a tribunal without jurisdiction." *Id.* § 9543(vii), (viii). However, the traditional view of sentence illegality claims was limited to either a sentence that exceeded that statutory maximum or one imposed by a court lacking jurisdiction. *See Foster*, 17 A.3d at 349 (Castille, C.J. concurring); *id.* at 356 (Eakin, J. concurring). In *Barnes*, this Court adopted a test to determine whether a sentencing claim is illegal, thereby expanding the concept of illegal sentencing. *See Barnes*, 122 A.3d at 127. That the PCRA speaks to addressing illegal sentences and specifically sentences exceeding the lawful maximum or imposed by a court without jurisdiction, does not preclude DiMatteo from obtaining relief from his unquestionably illegal sentence, as the "legality of the sentence is always subject to review within the PCRA" where, as here, the petition is timely. *Fahy*, 737 A.2d at 223 (Pa. 1999); *accord* 42 Pa.C.S. § 9542. Because DiMatteo's sentence was rendered illegal before his judgment of sentence became final and he presented his claim in a timely petition for post conviction relief, he is entitled to have his illegal sentence remedied.

IV.

Having concluded DiMatteo is entitled to PCRA relief from his illegal sentence, we turn now to what remedy is warranted under the circumstances. The Commonwealth contends that notwithstanding the fact that there was no agreement as to sentencing in this case, the Commonwealth nonetheless withdrew a number of counts based on DiMatteo pleading guilty. Commonwealth's Brief at 27. The decision of the Commonwealth to forgo additional counts "was premised in part on the mandatory sentences that applied to the counts" to which DiMatteo pleaded guilty. *Id.* The Commonwealth draws support from this Court's decision in *Commonwealth v. Ward*, 425 A.2d 401 (Pa. 1981). In *Ward*, the defendant pleaded guilty to murder generally and per the negotiated plea agreement, it was stipulated that the degree of murder would not rise higher than murder in the second degree. *Ward*, 425 A.2d at 402. The plea was accepted, and the trial court found Ward guilty of second-degree murder. Ward challenged the plea on appeal and was afforded a new trial. *Id.* Following remand, the Commonwealth filed notice of its intention to proceed on first-degree murder. Ward sought dismissal of the first-degree murder charge on double jeopardy grounds, and an interlocutory appeal from the denial of his pretrial motion ensued. This Court rejected the argument that the initial plea arrangement to second-degree murder was the equivalent of an implicit acquittal of the greater charge. *See id.* at 404-05. We explained:

> The participation of a defendant in the negotiation of a plea bargain successfully terminates trial proceedings that would otherwise determine the issue of guilt or innocence on all charges. Such action by the defendant, "is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the trier of fact." [*U.S. v. Scott*, 437 U.S. 82, 93, 98 (1978)]. This decision is made to avoid the potentially more severe consequences of going to trial. When the defendant's own action prevents adjudication of the greater charges, it is absurd to suggest that, in the event the defendant reneges

on his plea agreement, the government has relinquished its right to prosecute on those charges. The government simply has made a bargain which it is obligated to keep so long as the defendant is willing to abide by its terms. When a defendant abrogates a plea agreement, he resumes his preagreement status, and the government may proceed on the original charges as if the agreement had never existed.

***

A "mutuality of advantage" to be defendants and prosecutors flow from the ratification of the bargain. *Brady v. United States*, 397 U.S. 742, 752 (1970). When a defendant withdraws or successfully challenges his plea, the bargain is abrogated and he must be prepared to accept all of the consequences which the plea originally sought to avoid.

*Id.* at 406.

The Commonwealth also reproduces its own reasoning in *Commonwealth v. Jarosz*, 152 A.3d 344 (Pa. Super. 2016). *Jarosz*, however, involved a defendant who initially pleaded guilty and as a term of his plea, negotiated concurrent sentences on two unrelated cases. *Jarosz*, 152 A.3d at 348-49. Jarosz successfully withdrew his plea. He proceeded to trial, was found guilty by a jury of a number of charges, and sentenced to a term of imprisonment of four to fifteen years. *Id.* His judgment of sentence was affirmed, and Jarosz sought post conviction relief, arguing, inter alia, that his sentence following his jury conviction violated the terms of his *prior* plea agreement. *Id.* at 353. He contended that trial counsel was ineffective for failing to raise and argue that the terms of his new sentence differed from those of his plea agreement. Citing to *Ward* in its analysis, the Superior Court held that Jarosz's claim was without arguable merit because his own actions "abrogated the bargain and, thus, at sentencing, he was no longer entitled to receive the benefit of his bargain." *Id.*

The Commonwealth next contends that in *Commonwealth v. Melendez-Negron*, 123 A.3d 1087 (Pa. Super. 2016), the Superior Court concluded that the appropriate

relief to afford a PCRA petitioner who successfully challenges his sentence under *Alleyne* is to "restore the parties to their pre-plea agreement status." Commonwealth's Brief at 33. Accordingly, it posits the same relief is due here. We disagree.

On November 15, 2013, Melendez-Negron entered into a negotiated guilty plea to PWID and other possessory drug offenses. Based on his possession of a firearm during commission of the offenses, the Commonwealth sought imposition on the now constitutionally infirm mandatory minimum at 42 Pa.C.S. § 9712.1. Accordingly, the trial court sentenced him to five to ten years' imprisonment. *Melendez-Negron*, 123 A.3d at 1089. Forgoing a direct appeal, Melendez-Negron filed a timely PCRA petition challenging his sentence in light of *Alleyne* and subsequent appellate court decisions. Specifically, Melendez-Negron argued his counsel was ineffective for allowing him to enter into a guilty plea premised on the application of Section 9712.1. *Id.* at 1090; *accord* 42 Pa.C.S. § 9543(a)(2)(ii) (PCRA relief is available for claims of ineffective assistance of counsel). The PCRA court agreed, finding Melendez-Negron's counsel ineffective, granted his PCRA petition, vacated his judgment of sentence and remanded for a new sentence without consideration of the unconstitutional mandatory minimum.

On appeal, the Commonwealth initially argued that the PCRA court erred when it found counsel ineffective for permitting Melendez-Negron to enter into an illegal plea. *Id.* at 1090. Instead of affording relief based on the illegality of Melendez-Negron's sentence outright, the Superior Court analyzed the claim under the established framework for assessing whether counsel was constitutionally ineffective. *See id.* (observing that to prevail on an ineffectiveness claim under the PCRA a petitioner must demonstrate the underlying claim has arguable merit; counsel had no reasonable basis for his or her action or omission; and petitioner suffered prejudice). Concluding

petitioner met his burden, the Superior Court affirmed the determination that counsel was ineffective.

The Commonwealth next argued that the PCRA court should have returned the case to the "*status quo*" prior to the negotiated plea agreement rather than vacate the judgment of sentence because, on reliance of the imposition of the mandatory minimum sentence, the Commonwealth "gave up" seeking sentences on the lesser charges. *See id.* at 1090. The Superior Court agreed with the Commonwealth, drawing support from *Commonwealth v. Hodges* , 789 A.2d 764 (Pa. Super. 2002) and *Commonwealth v. Lenhoff*, 796 A.2d 338 (Pa. Super. 2002). In each case, the respective defendant's plea negotiations were tainted at the outset because of a shared misunderstanding of the possible penalty that could be imposed under law. *See Hodges*, 789 A.2d at 767 (Superior Court reversed the trial court's denial of motion to withdraw guilty plea explaining "the entire process of plea negotiations" was affected by the erroneous understanding that Hodges could face the death penalty when, in fact, because he was fifteen at the time of the offenses, the plea was "based on a maximum sentence that the court had no authority to impose"); *Lenhoff*, 796 A.2d at 342-43 (Superior Court reversed trial court's denial of Lenhoff's post-sentence motion to withdraw his guilty plea because Lenhoff entered the negotiated plea under the mistaken belief that his forgery conviction was graded as a second-degree felony rather than a third-degree felony).

The *Melendez-Negron* court concluded that the case "is fundamentally akin to *Hodges* and *Lenhoff*" differing only in the respect that in the case of *Melendez-Negron*, it was the Commonwealth and not the defendant who was "deprived the benefit of its bargain." *Melendez-Negron*, 123 A.3d at 1093. The court thus concluded that the parties' negotiations began from an "erroneous premise and therefore were fundamentally skewed from the beginning." *Id.* at 1094. Consistent with the

dispositions in *Hodges* and *Lenhoff*, the Superior Court vacated the guilty plea and remanded. *Id.*

The Commonwealth concludes its argument by reiterating that the parties to a plea are entitled to the benefit of their bargain. Commonwealth's Brief at 33. Moreover, if "either party to a negotiated plea agreement" believed that the opposing side could "have the sentence unilaterally altered" neither party "would be willing to enter into such agreement." *Id.* at 34.

DiMatteo contends the relief he received from the Superior Court is consistent with the relief ordered in other cases where the defendant was adjudged to receive illegal sentences under *Alleyne*. Commonwealth's Brief at 20 (citing *Wolfe*, 140 A.3d at 654, 663 (affirming Superior Court disposition ordering resentencing); *Barnes*, 151 A.3d at 127 (same)). He argues the Commonwealth waived its position for failure to file a cross-appeal to the Superior Court, and in the alternative, that it is meritless. Specifically, he posits that vacating his guilty plea would "violate double jeopardy rights" and due process. *See id.* at 21-22. Further, DiMatteo asserts that the Commonwealth's argument lacks any support in the record because he was not party to a negotiated guilty plea; rather, he entered into an open guilty plea without any agreement on sentencing. *See id.* at 22-23. Moreover, he was advised on his written guilty plea colloquy and at sentencing, that he could challenge the legality of his sentence. *See id.* at 23-24. DiMatteo emphasizes that the Commonwealth initially offered him a plea deal of twenty to forty years' imprisonment, but that he rejected the offer and elected to proceed to an open guilty plea. *Id.* at 25; *see* N.T., 2/6/13, at 27. Further, the Commonwealth's claim that it dropped certain charges in exchange for a plea is not supported by the record, as the Commonwealth was not pursuing certain charges due to the unavailability of a necessary witness. *Id.* (citing N.T., 2/6/13, at 23-

26). DiMatteo concludes that the Commonwealth had opportunity to challenge the sentence earlier and it elected not to do so; therefore, "[i]t may not now use defendant's permissible challenge to the illegal mandatory minimum sentence as a fundamentally unfair springboard to vacate his guilty plea, obtain a trial on all charges, and a possible increase in overall sentence." *Id.* at 26.

We agree with the Superior Court that the appropriate remedy in this case is vacating the judgment of sentence and remanding without consideration of the mandatory minimum sentence. We reach this conclusion based on the particular circumstances and timing of the entry of DiMatteo's plea. Although both this case and *Melendez-Negron* arise in the context of seeking collateral relief under the PCRA, the remedies are specific to the unique procedural posture of the case. First, we note that the Superior Court in *Melendez-Negron* analyzed the claim under the ineffectiveness paradigm. A finding that plea counsel was constitutionally ineffective which resulted in prejudice entitled Melendez-Negron to relief under the PCRA in the form of vacating the plea. *See* 42 Pa.C.S. § 9543(a)(2)(ii). In the instant circumstance, the Superior Court found the illegality of the sentence manifest and ordered relief from the illegal sentence, a remedy authorized by the PCRA. 42 Pa.C.S § 9542. Moreover, Melendez-Negron's negotiated guilty plea was accepted on November 15, 2013, which was five months after the decision in *Alleyne* was announced and one month following the intermediate court's opinion in which it determined that Section 9712.1 was unconstitutional as applied. *See Melendez-Negron*, 123 A.3d at 1090-91. Consequently, at the time of the plea, counsel was ineffective for failing to advise Melendez-Negron to "reject a plea that incorporated a sentence based upon § 9712.1. This is so especially in light of the fact that the application of § 9712.1 resulted in a sentence that was more than double the aggravated range sentence" he would otherwise face. *Id.* at 1091. Further, the

rationale of *Hodges*, *Lenhoff*, and *Melendez-Negron* stand for the proposition that "both parties to a negotiated guilty plea" are entitled to the benefit of their bargains, but such bargains may not be premised on some "shared misapprehension" that wrongfully induces the plea. *See id.* at 1092. Accordingly, the holdings of those cases apply only to negotiated guilty pleas, not to open guilty pleas.

In the instant case, at the time DiMatteo entered into his open guilty plea, there was no "shared misapprehension" regarding the legality of the sentences that could be imposed, and there was no agreement or bargain between the Commonwealth and DiMatteo as to sentencing at all. The sentencing court did not impose its sentence under a misconception over what sentence it could impose under law. *See Melendez-Negron*, 123 A.3d at 1093. Rather, following sentencing, *Alleyne* was decided, rendering the mandatory minimum schemes with the defective judicial fact-finding procedure illegal. This is not an occasion where a defendant and the Commonwealth bargained for a term of imprisonment, and the defendant reneged. DiMatteo pleaded guilty to a number of counts, with no agreement or contract with the Commonwealth and then challenged the legality of his sentence. *But cf. Commonwealth v. Martinez*, 147 A.3d 517, 532-33 (Pa. 2016) ("the convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement."). The remedy is a correction of the illegal sentence. *See Commonwealth v. Vazquez*, 744 A.2d 1280, 1284 (Pa. 2000).

Accordingly, the order of the Superior Court is affirmed.

Chief Justice Saylor and Justices Donohue, Dougherty and Wecht join the opinion.

Justice Baer files a concurring opinion in which Justices Todd and Wecht join.