J-A11013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SEAN C. SMITH :
:
Appellant : No. 768 WDA 2022

Appeal from the Judgment of Sentence Entered January 3, 2022
In the Court of Common Pleas of Westmoreland County
Criminal Division at No: CP-65-CR-0001168-2020

BEFORE: BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.: **FILED: JULY 17, 2023**

Appellant, Sean C. Smith, appeals from his judgment of sentence of five
to ten years' imprisonment for manufacturing a controlled substance
(methamphetamine), 35 P.S. § 780-113(30), and other offenses. Appellant
contends, *inter alia*, that the court violated his constitutional rights by failing
to have the jury determine the weight of the methamphetamine that he
manufactured. We disagree, and we affirm.

Appellant was charged with operating a methamphetamine lab,
possessing a precursor chemical with the intent to manufacture
methamphetamine, manufacturing a controlled substance with intent to
deliver ("manufacturing"), possession of a controlled substance, possession of
drug paraphernalia, and recklessly endangering his parents as occupants of
the dwelling where the drug-related offenses occurred. During Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

trial, New Kensington detective Sam Long testified that when he entered Appellant's residence, he found Appellant and his parents inside the residence. The detective discovered the methamphetamine lab in the basement and evacuated Appellant's parents from the residence.

Detective Long also testified as to the danger posed by the drug-related items he found in the basement. Corporal Ronald Jarvie, an expert in the illegal production of methamphetamine, testified about the extremely dangerous nature of methamphetamine production. A forensic chemist, Jason Harner, testified that the substances containing methamphetamine found in the basement weighed 389 grams. Following a two-day trial, the jury found Appellant guilty on all charges except operating a methamphetamine lab.

Due to his extensive criminal history, the court found that Appellant's prior record score was nine and that his offense gravity score was eleven. 204 Pa. Code. § 303.15 (listing offense gravity score as eleven for manufacturing with intent to deliver an amount of methamphetamine between 100 and 1000 grams). The Commonwealth requested a sentence of seven to fourteen years' imprisonment. On January 3, 2022, the court sentenced Appellant to five to ten years' imprisonment for manufacturing, a sentence at the bottom of the standard range. 204 Pa. Code § 303.16(a) (standard minimum sentence for offense gravity score of eleven and prior record score of nine is 60-72 months' imprisonment). The court imposed concurrent sentences on the other counts of conviction. On January 13, 2022, Appellant filed timely post-sentence motions. In an order docketed on June 15, 2022, the court denied Appellant's

J-A11013-23

post-sentence motions.  On June 30, 2022, Appellant filed a timely notice of appeal.[1]  Appellant complied with Pa.R.A.P. 1925.  In response, the court

_____

[1] On May 9, 2022, Appellant filed a request for an extension of time for the trial court to decide the post-sentence motion.  See Pa.R.Crim.P. 720(B)(3)(b) ("Upon motion of the defendant within the 120-day disposition period, for good cause shown, the judge may grant one 30-day extension for decision on the motion.  If the judge fails to decide the motion within the 30-day extension period, the motion shall be deemed denied by operation of law").  The trial court did not grant the request for an extension of time to decide the post-sentence motion.  Nor did the court decide the motion within 30 days after May 13, 2022, which would have been Monday, June 13, 2022.  Instead, the court denied the post-sentence motion by order docketed on June 15, 2022.  Appellant filed a notice of appeal on June 30, 2022.

Because the trial court did not grant the request for an extension of time to decide the post-sentence motion, the motion should have been considered denied by operation of law after May 13, 2022.  When a post-sentence motion is denied by operation of law, the clerk of courts must enter an order on behalf of the court stating that the post-sentence motion is deemed denied.  Pa.R.Crim.P. 720(B)(3)(c).

This Court has held that a breakdown in the operations of the court occurs when the clerk of courts fails to enter an order deeming a post-sentence motion denied by operation of law and notifying the defendant of the same.  **Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003).  When a trial court denies a post-sentence motion after the 120-day period and the appellant appeals within thirty days of the date of that decision, we have held that the notice of appeal is timely.  **Perry**; **see also Commonwealth v. Braykovich**, 664 A.2d 133 (Pa. Super. 1995) (notice of appeal was timely because it was filed within thirty days of untimely order denying post-sentence motion).

Pursuant to **Perry** and **Braykovich**, we hold that a breakdown in the operations of the court occurred due to the court's failure to enter a timely order denying Appellant's post-sentence motions by operation of law.  We further hold that Appellant's appeal is timely because he filed his notice of appeal within thirty days after the court's untimely order denying post-sentence motions.

- 3 -

entered an order incorporating by reference its June 22, 2022 opinion in support of its order denying post-sentence motions.

Appellant raises the following issues in this appeal:

1. WHETHER THE COURT'S FAILURE TO HAVE THE JURY DETERMINE THE WEIGHT OF THE CONTROLLED SUBSTANCE FOR WHICH [APPELLANT] WAS CONVICTED OF MANUFACTURING A CONTROLLED SUBSTANCE WAS A VIOLATION OF HIS 5TH AND 14TH AMENDMENT RIGHTS UNDER THE DUE PROCESS CLAUSE?

2. WHETHER [APPELLANT] SHOULD BE ENTITLED TO AN ACQUITTAL ON THE CONVICTIONS OF RECKLESSLY ENDANGERING ANOTHER PERSON BECAUSE THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE PROVING ALL OF THE ELEMENTS OF THAT CRIME?

Appellant's Brief at 7.

In his first argument, citing *Alleyne v. United States*, 570 U.S. 99 (2013), Appellant argues that his sentence is unconstitutional, because the court determined the weight of the methamphetamine found in his basement at sentencing instead of directing the jury to determine the weight of the methamphetamine during trial. We disagree.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that any fact, other than that of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id.*, 530 U.S. at 490. Several years later, the Court held in *Alleyne* that any fact that increases the mandatory minimum sentence for a crime "is an element that must be submitted to the jury and found beyond a reasonable doubt." *Id.*,

570 U.S. at 102. The Court reasoned that the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum sentence. *Id.*

Appellant contends that *Alleyne* applies to the calculation of his offense gravity score in the present case. He observes that the determination of the weight of the methamphetamine found in his basement affects his offense gravity score, which in turn affects his minimum sentence. Therefore, he argues, *Alleyne* requires the jury to determine the weight question during trial and find the weight of the amphetamine beyond a reasonable doubt. This argument fails for three reasons. First, *Alleyne* only applies to facts that increase the mandatory minimum or mandatory maximum sentence. There is no mandatory minimum sentence in this case, because 18 Pa.C.S.A. § 7508, the statute requiring mandatory minimum sentences in drug cases, has been held unconstitutional. *See Commonwealth v. DiMatteo*, 177 A.3d 182 (Pa. 2018). Second, weight is not an element of 35 P.S. § 780-113(30), the statute proscribing manufacture of a controlled substance with intent to deliver. *Commonwealth v. Sunealitis*, 153 A.3d 414, 420 (Pa. Super. 2016) ("Nothing in [Section 780-113(a)(30)] requires the Commonwealth to prove any amount of weight. . . . Weight is simply not an element of the crime itself"). Thus, Section 780-113(a)(30) did not require the jury to determine weight during trial. Third, although the weight of the controlled substance

affects Appellant's offense gravity score,[2] the offense gravity score is merely one component of the sentencing guidelines, none of which are binding on the trial court. **Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) ("the sentencing court is required to consider the sentence ranges set forth in the sentencing guidelines, but it [is] not bound by the sentencing guidelines. The court may deviate from the recommended guidelines; they are merely one factor among many that the court must consider in imposing a sentence"). As a non-binding sentencing factor, the offense gravity score falls outside the scope of **Alleyne**. Accordingly, we reject Appellant's challenge to the constitutionality of his sentence.

Next, Appellant contends that the evidence was insufficient to sustain his conviction for reckless endangerment, because the Commonwealth failed to prove that the methamphetamine lab was operational and, therefore, it did not place Appellant's parents in danger of death or serious bodily injury. We disagree.

When reviewing a challenge to the sufficiency of the evidence, we determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the

_____

[2] In drug cases, the offense gravity score depends on the weight of the controlled substance. For example, the offense gravity score for manufacturing 50 to 100 grams of methamphetamine is ten, while the offense gravity score for manufacturing 100 to 1000 grams of methamphetamine is 11. 204 Pa. Code § 303.15.

verdict winner, are sufficient to support all the elements of the offense." *Commonwealth v. Cline*, 177 A.3d 922, 925 (Pa. Super. 2017). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013).

The Crimes Code defines reckless endangerment as "conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. An individual is guilty of this offense if he "(1) possessed a *mens rea* [of] recklessness, (2) committed a wrongful deed or guilty act (*actus rea*), and (3) created by such a wrongful deed the danger of death or serious bodily injury to another person." *Commonwealth v. Brockington*, 230 A.3d 1209, 1215 (Pa. Super. 2020). The mental state of recklessness is "a conscious disregard for a known risk of death or great bodily harm to another person." *Id.* The crime "requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." *Id.* Reckless endangerment "does not require any particular person to be actually placed in danger, but deals with potential risks, as well as cases where a specific person actually is within the zone of danger." *Commonwealth v. Lawton*, 414 A.2d 658, 662 (Pa. Super. 1979).

Detective Long of the City of New Kensington Police Department testified that on March 10, 2020, he entered the premises where Appellant lived with

his parents, Jeannie and Richard Smith. Tr., 10/7/21, at 54-55. As Long entered the basement, he "immediately recognized the precursors of a possible one-pot methamphetamine lab." *Id.* at 59. Forensic scientist Harner, the Commonwealth's expert in methamphetamine production, opined that Appellant manufactured methamphetamine using the "one-pot" method. *Id.* at 185-201. Detective Long immediately evacuated Appellant and his parents from the premises once he suspected one-pot production. *Id.* at 59. When asked why, he responded:

> With one-pot methamphetamine production, the substance that's inside of that bottle, just merely taking the lid off and dumping some of it out, it can burst into flames. The gases, the chemicals, react very poorly with each other whenever they're mixed in a certain way if you don't really know what you're doing, and they immediately burst into flames, and it'll cause a very catastrophic fire.

*Id.* at 60. Pennsylvania State Trooper and Clan Lab Response Team Member David Williams testified that "once [he] entered the basement, [he] started seeing factors of criminal activity that are associated with the manufacture of methamphetamine." *Id.* at 88. He started retrieving relevant articles but made sure to keep them apart to prevent them from touching and possibly igniting. *Id.* at 95. One of the recovered items, an AA lithium battery, had its internal components removed. Williams explained that removal of these components is necessary for the production of methamphetamine, but they are "highly volatile" and "very explosive when handled incorrectly." *Id.* at

102. The materials in a methamphetamine lab are so dangerous to remove that a forensic scientist must be on scene to tell the officers how to proceed:

> The forensic scientist ultimately tells us what to pick up. We make sure that we're keeping these items separated. A lot of these different items . . . if they would get close to one another, touch, or be added could ignite or start, for lack of better terms, movement again. So the collection process is usually we take it outside at first, lay everything out, and keep things separated . . . in properly liquid-tight containers and stuff like that . . .

*Id.* at 95.

This evidence demonstrates that Appellant operated a one-pot methamphetamine lab in the basement of the home in which he and his parents resided. Appellant's parents were present when Detective Long entered the premises on March 10, 2020 and discovered the methamphetamine lab. Although the lab was not in operation at the time of discovery, the evidence shows that it is extremely dangerous for methamphetamine lab components to be in proximity to each other due to the risk of fire or explosion. Thus, the mere existence of a methamphetamine lab in the basement placed Appellant's parents in danger of death or serious bodily injury. Accordingly, Appellant's challenge to the sufficiency of the evidence fails.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/17/2023