J-A06043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                              :

v.                                         :

JOHN JOEL RALSTON             :

           Appellant          :      No. 707 WDA 2022

Appeal from the Judgment of Sentence Entered April 29, 2022
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000083-2014

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                              :

v.                                           :

JOHN JOEL RALSTON             :

           Appellant          :      No. 708 WDA 2022

Appeal from the Judgment of Sentence Entered April 29, 2022
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000022-2014

BEFORE: OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:       **FILED: FEBRUARY 28, 2023**

     John Joel Ralston (Ralston) appeals from the judgment of sentence imposed on April 29, 2022, in the Court of Common Pleas of Clearfield County

---

[*] Retired Senior Judge assigned to the Superior Court.

(PCRA court) after the grant of his first Post-Conviction Relief Act (PCRA)[1] petition based on his illegal sentence claim and second resentencing hearing. He argues that the aggregate sentence of not less than 40 nor more than 80 years' incarceration for his guilty plea to ten counts of Involuntary Deviate Sexual Intercourse (IDSI) and related charges is manifestly unfair and unjust under the circumstances. He also maintains that the PCRA court erred in failing to address his claims of ineffective assistance of trial counsel and involuntary guilty plea. We affirm.

We take the following factual background and procedural history from this Court's May 3, 2016 opinion and our independent review of the record.

## I.

## A.

On December 18, 2013, Ralston was charged at 22-2014 with ten counts each of Felony 1 statutory sexual assault, Felony 1 IDSI, Felony 3 corruption of minors, and Misdemeanor 2 indecent assault; and 11 counts of Misdemeanor 3 selling or furnishing liquor or malt or brewed beverages to

---

[1] 42 Pa.C.S. §§ 9541-9546.

minor, 22–2014.[2] An additional charge of Misdemeanor IDSI-person less than 13 years of age was imposed at docket number 83-2014.[3]

The charges at 22-2014 involved Ralston's conduct between June 1, 2010, and August 30, 2013, when he would have several juvenile boys visit his camp in Clearfield County where Ralston would provide them with alcoholic beverages.[4] He confessed that he performed oral sex at least ten times on the minor victim (Victim), which were consistent with the Victim's statements. The charge at 83-2014 involved an incident in February or March 2013 when Ralston put his hand in the Victim's pants and touched him inappropriately. Ralston was approximately 48 years old when the incidents began in 2010 and the Victim was less than 16.

The Commonwealth offered Ralston a negotiated plea with a sentence of ten to twenty years' incarceration, which Ralston rejected. After selecting a jury, Ralston filed a motion to continue trial/leave to file a *nunc pro tunc* pretrial suppression motion on April 29, 2014. The court denied the motion.[5]

_____

[2] 18 Pa.C.S. §§ 3122.1(b), 3123(a)(7), 6301(a)(1)(ii), 3126(a)(8) and 6310.1(a), respectively.

[3] 18 Pa.C.S. § 3126(a)(7).

[4] Similar charges were brought against Ralston in Huntingdon County for his illegal sexual contact with the Victim there.

[5] In its May 8, 2015 opinion, the court explained that although it was sympathetic to the pressures and time constraints of trial, Ralston's public defender had been assigned to him on April 17, 2014, more than two weeks
*(Footnote Continued Next Page)*

- 3 -

On April 30, 2014, the day before trial was scheduled to commence, Ralston entered an open guilty plea to all charges at both docket numbers. During the plea hearing, the court conducted a thorough colloquy in which Ralston stated, in pertinent part, that he was satisfied with counsel's representation and was voluntarily and knowingly entering the plea. On May 30, 2014, Ralston filed a petition to withdraw his plea, which the trial court denied on June 24, 2014.

On September 15, 2014, Ralston waived his right to an assessment hearing and stipulated to his classification as a sexually violent predator based on the report of the Sexual Offender Assessment Board. Pursuant to the mandatory minimum at 18 Pa.C.S. § 3123, the court sentenced Ralston to an aggregate term of incarceration of 40 to 80 years, which included four terms of not less than ten nor more than twenty years on four IDSI counts, with all remaining counts to run concurrently. On September 25, 2014, Ralston filed post-sentence motions at both dockets.

---

before trial and that, prior to that time, Ralston had been represented by other competent attorneys from the public defenders' office. The court also noted that the only support for the suppression motion was counsel's statement that he believed there was a reasonable basis on which to seek suppression of Ralston's confession, which failed to suggest that the confession was illegally obtained or apprise the court of any other reason to grant the motion. (**See** Trial Court Opinion, 5/08/15, at 4-5).

**B.**

In his post-sentence motions, Ralston argued that the trial court erred in denying his motion to continue trial/leave to file a *nunc pro tunc* pretrial suppression motion and his motion to withdraw his guilty plea, and that trial counsel was ineffective for failing to thoroughly review evidence in his case, communicate with him, provide him with certain discovery items or file a pretrial motion to suppress, resulting in an unlawfully induced guilty plea. On December 12, 2014, Ralston's appointed public defenders testified and a full hearing was held on all issues raised in the post-sentence motions.[6]

On February 11, 2015, the court denied his post-trial motion, finding, in pertinent part, that Ralston failed to prove that his claims of trial counsel's ineffectiveness had underlying merit or that the outcome of the proceedings would have been different. The court also noted that, even if counsel's performance had been deficient, the court had engaged in a lengthy guilty plea colloquy with Ralston in which he "unequivocally stated that his open guilty plea was entered knowingly, voluntarily, and intelligently," a stance that

_____

[6] Clearfield County Chief Public Defender Daniel C. Bell, Esquire, testified it is normal practice for a defendant to have different assistant public defenders represent him throughout litigation before one is assigned for trial. Three public defenders represented Ralston for various pre-trial phases of the litigation before Assistant Public Defender Michael Marshall was assigned to Ralston's case. Once the suppression motion was denied, Attorney Marshall advised Ralston to enter a plea because he was 100 percent convinced Ralston would be convicted based on the evidence and he hoped the sentence would be less if Ralston entered a plea than if he went to trial.

he again verified at the December 12, 2014 post-trial motion hearing and, therefore, any alleged deficiencies of counsel did not impact the knowing, intelligent and voluntary nature of the plea. (Trial Court Opinion, 2/11/15, at 3); (*see* N.T., 12/22/14, at 109, 131); (Trial Court Opinion, 5/08/15, at 8-11).

This Court affirmed Ralston's judgment of sentence on May 3, 2016. The panel concluded that Ralston waived his claim regarding the court's denial of his pretrial motion to continue trial/file a *nunc pro tunc* pretrial suppression motion by entering a guilty plea. The Court also found that the trial court properly denied his motion to withdraw the plea where Ralston:

> does not assert his innocence. Nor does [he] posit that his plea was involuntarily, unknowingly, or unintelligently entered. Instead, [Ralston] asserts that he wished to withdraw his guilty plea in order to proceed with trial. However, by the very nature of a plea, [Ralston] decided to waive his right to a trial at the time he entered his plea. Moreover, Ralston was explicitly advised of his waiver of this right during the oral and written colloquies.
>
> Additionally, we note that [Ralston]'s stated reason for changing his mind about proceeding to trial was based upon his bald assertion that there was a credibility issue with one of the witnesses. … [This] did not amount to a fair and just reason to withdraw his guilty plea. The reasons offered appear to amount to no more than buyer's remorse and an attempt to delay the inevitable.

(***Commonwealth v. Ralston***, 2016 WL 1756988, unpublished memorandum, at *2 (Pa. Super. filed May 3, 2016)); (*see id.* at *5). We dismissed his ineffective assistance of counsel claims without prejudice to re-raise them on collateral review. (*See id.* at *6).

- 6 -

**C.**

On May 30, 2017, Ralston filed a timely counseled PCRA petition in which he challenged the ineffectiveness of trial counsel on the same bases as he had in his post-trial motions: counsel's pre-trial lack of preparation led to his entry of an unknowing and involuntary guilty plea. On August 24, 2021, the court held a hearing on the petition, at which time Ralston amended the pleading to include an illegal sentence claim, arguing that the mandatory minimums imposed in his case had since been declared unconstitutional. (**See** N.T. PCRA Hearing, 8/24/21, at 3). Ralston's counsel admitted that the ineffective assistance of counsel claims had all been litigated at the post-sentence motion hearing on December 22, 2014,[7] and were decided by the trial court, but they were not "fully litigated" because we dismissed this issue without prejudice in his direct appeal.

On November 21, 2021, after receiving the parties' briefs and reviewing the relevant case law, an order was entered vacating Ralston's sentence as illegal pursuant to **Commonwealth v. DiMatteo**, 177 A.3d 182 (Pa. 2018),[8]

---

[7] Rather than recall all the witnesses, counsel offered the transcript of the post-trial motion hearing as an exhibit at the PCRA hearing. (**See** N.T. PCRA Hearing, at 5-6).

[8] **Alleyne v. United States**, 570 U.S. 99 (2013) held that any fact which, by law, increases the mandatory minimum sentence for a crime must be: (1) treated as an element of the offense as opposed to a sentencing factor; (2) submitted to the jury; and (3) found beyond a reasonable doubt. **Alleyne**, 570 U.S. at 116. **DiMatteo** held, "where a petitioner currently serving a
*(Footnote Continued Next Page)*

and ordered that he be resentenced. (**See** Order, 11/21/21, at 1-2). It did not address Ralston's other claims again.

**D.**

At the February 22, 2022 resentencing hearing, Ralston and his sister addressed the court to request a lower sentence. Ralston testified that he has bettered himself since incarceration, including obtaining his GED and taking additional classes, living on the honor block and maintaining a job. His sister testified about the family's support of Ralston despite his convictions. Nobody spoke on the Victim's behalf because the Commonwealth failed to notify the Victim's family about the hearing due to an administrative oversight. Based on the testimony and counsel's argument, the court imposed an aggregate sentence of not less than 25 nor more than 50 years' incarceration. Specifically, Ralston was sentenced to five to ten years of incarceration on each of the ten IDSI counts, with five to run consecutively to each other and the rest of the counts of the Informations to run concurrently.

---

mandatory minimum sentence has filed a timely PCRA petition and his judgment of sentence was not final at the time **Alleyne** was decided, his sentence is illegal and he is entitled to a new sentence." **DiMatteo**, 177 A.3d at 185. Instantly, Ralston was sentenced after **Alleyne** was decided, and his judgment of sentence did not become final until June 2, 2016, after this Court decided his direct appeal and he did not request permission for further review.

On March 3, 2022, the Commonwealth filed a motion for reconsideration of sentence that requested the court to hear testimony on the Victim's behalf. The court scheduled a hearing on the motion for April 29, 2022. It explains:

> … [A]t the reconsideration hearing, this [c]ourt heard from the victim's mother and father. Also, the victim's father read a letter from the victim's step-mother, and the victim's mother read letters from two maternal aunts and the victim's grandfather. The commonality between all of the statements was how harshly [Ralston]'s actions have affected the victim's life and their lives. Since the start of this case, the victim has become reclusive, anxious, and paranoid, to the point that the victim barricaded himself in the attic and nailed blankets to the window so no one would be able to see him. He has become distrustful of everyone, including his parents and family members; the victim's mother even testified that the only connection the victim has and trusts is his cat. The family also stated that the victim is now an alcoholic who rejects treatment because he refuses to discuss the trauma he endured from [Ralston].
>
> Even though the victim is now twenty-five years old, he has only just been able to live on his own. And although he has his own apartment, the victim still relies heavily on his mother. The victim has lost multiple jobs due to the impact of [Ralston]'s action. At one point, the victim was working as a cashier and had to walk out of his job because he became fearful when he saw a man that resembled [Ralston]. As a result of the abuse, the victim has been hospitalized for several suicide attempts, and the family is certain that if [Ralston] were to be released the victim would attempt suicide again.
>
> Not only did the family discuss the impact [Ralston] had on the victim, they described the impact on their own lives. All of the family members miss the person that the victim used to be. Additionally, the family lives with severe guilt that they were unable to protect the victim from [Ralston] or recognize that the abuse was occurring. They live each day with fear that the victim will attempt suicide again and are unable to help in any way. Furthermore, the family testified that another victim of [Ralston] had committed suicide less than one week prior to the hearing.

(Trial Court Opinion, 7/13/22, at 5-6); (*see also* N.T. Reconsideration

Hearing, 4/29/22, at 2-17).

At the conclusion of the testimony, Ralston's counsel argued that:

[T]his isn't a case where we're back for re-sentencing as a result of you believing the sentence was too harsh. This is a separate case where [the] [S]uperior [C]ourt determined that these mandatory minimums were illegal, and you were required to re-sentence. [The first resentencing imposed on February 22, 2022 was] fair and just and not a lenient sentence. We're asking you to re-impose the same sentence.

(N.T. Reconsideration Hearing, 4/29/22, at 18). The Commonwealth argued

that something like the original September 15, 2014 (40 to 80 years) sentence

would be appropriate. After Ralston declined to speak on his own behalf, the

court stated, in pertinent part:

Well, for whatever reason, somebody dropped the ball in the DA's office. Had I heard these statements back on February 22nd of this year, I am quite sure that would have had a bearing upon my decision that I rendered on that day.

The only thing I did hear on that day was that the -- what [Ralston] has accomplished since his incarceration at the state institution began, which I must say were positive. I also heard from [his] family member at that time. I also heard from [his] counsel[.]

But I have to say that had I heard what I heard today, I'm quite confident that the outcome would have been different. So the Court needs to attempt to balance what I heard on February 22nd of this year and what I heard today. Today, I heard a completely different story.

I did not hear on the 22nd about how the victim was affected at all, and I must say it's a very sad story what has transpired since this young man was 16 years old, I believe.

\* \* \*

You know, I can't change what's happened, I can't change that the victim's parents and family weren't notified [about the February 22nd hearing] for whatever reason. I would have liked to have heard everything on that day.

The Court will enter the following: Now, this 29th day of April, 2022, following argument on the motion for reconsideration of sentence filed by the Commonwealth; the Court having been read statements from various family members of the victim; upon consideration of the statements made at [the] hearing on February 22nd, as well as all statements made this date, it is the order of this Court that the motion for reconsideration shall be and is hereby granted.

(*Id.* at 19-21). The court then resentenced Ralston with the aid of a Pre-Sentence Investigation (PSI) report, ordering that three more of the ten IDSI counts were to run consecutive to the previously ordered five consecutive counts, and the remaining charges to run concurrent resulting in Ralston being sentenced to serve an additional 15 years, *i.e.*, an aggregate term of not less than 40 nor more than 80 years' incarceration.

Ralston timely appealed and filed a court-ordered statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). He raises two questions for our review: (1) whether the court committed an error of law and created an appearance of impropriety by resentencing him to a term of not less than 25 nor more than 50 years but then, after a second resentencing hearing, imposing a 40 to 80 year aggregate sentence; and (2) whether the PCRA court committed an error of law by failing to address and grant relief on all issues raised in the PCRA other than the illegal sentence claim. (*See* Ralston's Brief, at 4).

**II.**

**A.**

Ralston argues that "the weight the trial court afforded to [the victim's] statements and more aptly, the impact of the offenses on the victim, was disproportionate to the other sentencing considerations and resulted in a manifestly unfair and unjust sentence." (*Id.* at 10); (*see id.* at 15) (increasing the sentence "based on the statements of the victim's family members is unduly harsh, excessive, and not supported by the record.").

This issue challenges the discretionary aspect of sentence,[9] which is not appealable as of right, and is more properly considered a request for permission to appeal. *See Commonwealth v. Tavarez*, 174 A.3d 7, 9-10 (Pa. Super. 2017). Before we can reach the merits of a discretionary aspects of sentence issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902

---

[9] Our standard of review is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Taylor*, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted).

and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Watson**, 228 A.3d 928, 935 (Pa. Super. 2020) (citations omitted). "Generally, objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing." **Id.** (citation omitted). "When appealing the discretionary aspects of a sentence, an appellant must also invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code." **Id.** (citation omitted).

In this case, Ralston timely appealed and included a Rule 2119(f) statement in his brief. He maintains that his issue was properly preserved at the second resentencing hearing during counsel's pre-sentence argument that the court should reimpose the 25 to 50 year sentence imposed after the first resentencing hearing where the resentencing was only occurring at all because the mandatory minimums were declared unconstitutional. (**See** N.T. Second Resentencing Hearing, 12/22/21, at 18). The Commonwealth argues that this statement was not an objection to the discretionary aspects of the imposed sentence, but was merely a request for a different sentence that was made before the new sentence's imposition. (**See** Commonwealth's Brief, at 9-10).

- 13 -

Our independent review of the record reveals that Ralston did not preserve this issue. After the court imposed the April 22, 2022 resentencing, Ralston's counsel raised no objection. Further, it is undisputed that he did not file a post-sentence motion challenging the sentence. His argument that because the Commonwealth had filed a motion for reconsideration after the first resentencing, any motion he would have filed would have been denied is not persuasive. (**See** Ralston's Brief, at 12). The fact remains that he was required to either object to the sentence at the hearing or in a post-sentence motion in order to preserve the issue and he failed to do so. We agree with the Commonwealth that Ralston failed to preserve the discretionary aspects of a sentence challenge on this basis.

Further, even if Ralston preserved this issue, it fails to raise a substantial question. While he recognizes that a claim that a court imposed consecutive rather than concurrent sentences does not present a substantial question, Ralston maintains that because the court increased the sentence after only hearing from the Victim's family members, and the sentence is excessive for his criminal conduct that only involved one victim, it raises a substantial question. (**See** Ralston's Brief, at 12-13). The Commonwealth counters that the sentence was within the standard range identified in the PSI and directly related to the gravity of the offense and its impact on the lives of the Victim and his family. (**See** Commonwealth's Brief, at 11).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Watson***, 228 A.3d at 935. (citation omitted). Such a question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation omitted). "A claim of excessiveness can raise a substantial question as to the appropriateness of sentence under the Sentencing Code, even if the sentence is within the statutory limits." ***Id.*** (citation omitted). However, a substantial question is raised only "where the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014) (citing 42 Pa.C.S. § 9781(c)(2)).

Here, Ralston fails to establish that the judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms of the sentencing process. Nor do the circumstances of this case make the application of the guidelines unreasonable. Ralston pleaded guilty to 52 counts involving inappropriate contact with a minor, including ten counts of IDSI. He received consecutive standard range sentences for eight of the IDSI counts and the sentences on all remaining counts ran concurrently. While this was more than the sentence imposed after

- 15 -

the first resentencing, we cannot find that the circumstances of the case made the sentence unreasonable where it was directly related to the additional evidence admitted about how the Victim and his family suffered as a result of Ralston's actions. Ralston has failed to raise a substantial question. Moreover, even if he had properly preserved the issue and raised a substantial question, Ralston would be due no relief on this claim.

**B.**

Ralston argues that the court abused its discretion in sentencing him and created "an appearance of impropriety"[10] because the sentence imposed was "unduly harsh, excessive, and not supported by the record" where it is not "rationally related to the criminal offenses committed." (Ralston's Brief, at 15).

**1.**

Pursuant to the Pennsylvania Judicial Code of Conduct, "[a] judge shall act at all times in a manner that promotes public confidence in the

---

[10] Ralston provides no legal citation or argument thereof about his allegation that the court created "an appearance of impropriety," a legal term of art that, as set forth above, is more than just an abuse of discretion. Thus, he has abandoned any allegation that the judge created such an appearance. Further, his entire argument section on the alleged abuse of discretion consists of another recitation of the case's procedural history and one case which he compares to question whether he should have received a lesser sentence. Hence, this issue is waived on these bases. *See* Pa.R.A.P. 2101, 2119(a)-(b). Moreover, as explained above, Ralston's claim fails on the merits.

independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."  PA ST CJC Rule 1.2.

> "Impropriety" is a defined term in the Terminology Section of the Code.  Actual improprieties include violations of law, court rules or provisions of this Code.  The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge.

*Id.* at Comment 5.

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*, 545 U.S. 1148 (2005).  Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S.A. § 9721(b).  The Crime Victims Act provides that victims have the right:

> To have opportunity to offer prior comment on the sentencing of a defendant … to include the submission of a written and oral victim impact statement detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. … Victim-impact statements shall be considered by a court when determining the … sentence of an adult.

18 P.S. § 11.201(5).  The "rights extended to victims of crime in [this Act] are to be honored and protected by law enforcement agencies, prosecutors and

- 17 -

judges in a manner no less vigorous than the protections afforded criminal defendants." 18 P.S. § 11.201.

To the contrary, the trial court posits that **not** being able to consider the testimony on behalf of the Victim before resentencing Ralston the first time was what created the appearance of impropriety that had to be remediated. The court explains that without the testimony provided at the second resentencing, the court could not consider the impact on the Victim and community, as required by the sentencing code. (**See** Trial Court Opinion, 7/13/22, at 5).

We agree with trial court. At the February 11, 2022 resentencing hearing, Ralston and his sister testified about Ralston's positive accomplishments since being incarcerated. Because of an administrative oversight, the Victim's parents were not notified about the hearing and the court imposed a sentence based only on the testimony presented in Ralston's favor. The Commonwealth properly filed a timely motion for reconsideration in which it advised the court that upon being notified of the modified sentence, the Victim's parents stated that they wished to address the court. (**See** Commonwealth's Motion for Reconsideration of Sentence, 3/03/22, at ¶ 9); Pa.R.Crim.P. 721. This was their protected legal right, which had been denied them by a Commonwealth oversight that was no fault of their own. **See** 18 P.S. § 11.201. After scheduling a hearing for the Victim's parents to make oral and written victim impact statements, the court imposed a sentence

based on consideration of all the evidence now before it. This did not violate the law or court rules, nor did it create a perception that "reflect[ed] adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." PA ST CJC Rule 1.2. Any claim that the court acted with an appearance of impropriety lacks merit.

**2.**

"An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing judge ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Hoch***, 936 A.2d 15, 17-18 (Pa. Super. 2007) (citations omitted). "Where a PSI report[] exist[s], we … presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. … Having been fully informed by the [PSI], the sentencing court's discretion should not be disturbed." ***Watson***, 228 A.3d at 936 (citations omitted).

The court explains:

Upon hearing the testimony from the family, the [c]ourt was compelled to increase [Ralston]'s sentence. [His] argument that the modification of the sentence was not related to the victim impact statements is wholly inaccurate. The modification amended the sentence for counts six through eight, CP-17-22-2014, IDSI, Felony 1. The information and testimony this [c]ourt received directly related to the gravity of the offenses committed, including the impact on the victim and the impact on the

- 19 -

community. The great amount of damage caused by [Ralston]'s actions largely overweighed the positive changes [he] has made since incarceration.

Despite the fact that [Ralston] has made positive changes in his life, the statements from the victim's family highlighted the fact that [Ralston] is still in need of rehabilitation. The acts toward the victim occurred over several years, and [Ralston] plied [him] with drugs and alcohol to make the victim more compliant. This led to the victim continuing to rely on alcohol to cope with the effects of the abuse. Not only did [Ralston] assault the one victim, he had numerous juvenile victims of sexual assault and many other juveniles that he supplied alcohol [to], which could have become future victims of sexual assault. Therefore, the testimony during the reconsideration hearing directly related to the increase in the sentence.

(Trial Ct. Op., 7/13/22, at 6-7).

We discern no abuse of discretion. At the first resentencing hearing, Ralston testified that since incarceration, he has obtained his GED, taken additional classes, lives on the honor block and maintains a job. His sister testified about the family support Ralston has despite his conviction. Convinced that Ralston had demonstrated that his need for rehabilitation was low, and without any evidence about the impact on the Victim or the community, the court imposed the 25 to 50 year sentence.

However, at the reconsideration hearing, the Victim's parents spoke about the impact of Ralston's crime on both them and the Victim, and read victim impact statements from four other relatives. They explained how the Victim has become reclusive, anxious and paranoid, locking himself in the attic, with blankets on the windows so no one can see him. He distrusts everyone, including his parents and family, and the only connection he has to

any living thing is his cat. The Victim has become an alcoholic who refuses treatment because he will not discuss the trauma caused by Ralston. The now 25-year-old has just now gotten his own apartment but relies heavily on his mother. He has lost multiple jobs because of the abuse's effect on his mental state and has been hospitalized multiple times for suicide attempts.

All the impact statements reflect that the family misses the person the Victim used to be before Ralston's actions. The family members live with severe guilt that they did not protect the Victim from Ralston or even realize the abuse was occurring. Every day they are afraid that the Victim will attempt suicide again and spoke of another victim of Ralston's (not involved in this case) who successfully committed suicide just a week before the reconsideration hearing. They did not even tell the Victim about the resentencing hearing because of the traumatic effect it would have. With a fuller picture for its consideration of the sentencing factors, the court imposed the 40 to 80 year sentence.

Based on all the foregoing, particularly where the court had the benefit of a PSI, we discern no abuse of discretion in the court's decision to reconsider its sentence and modify it upwards after hearing all testimony. This issue lacks merit.

**C.**

Ralston argues that the PCRA court erred as a matter of law in failing to address and grant his claims alleging the ineffective assistance of counsel and

resulting involuntary plea in its November 12, 2021 order.[11] (**See** Ralston's Brief, at 16). He asserts that counsel was ineffective for failing (1) to review evidence in preparation of trial, (2) to timely file a pretrial suppression motion, and (3) to timely file a continuance of trial so counsel could prepare for same. (**See** Ralston's Brief, at 23). Ralston argues that had counsel properly investigated and prepared for trial, he would have been more informed when deciding whether to enter his guilty plea and would have had a better chance to confront witnesses if he decided to go to trial instead. (**See id.** at 24). The Commonwealth counters that the court did not err when it failed to issue an order addressing Ralston's claims of ineffective assistance of counsel resulting in an improperly induced plea because it had previously addressed the issues in Ralston's post-sentence motion and concluded that they did not merit relief. (**See** Commonwealth's Brief, at 18).

We first observe that we find Ralston's claim that the trial court failed to address his claims of trial counsel's ineffectiveness and the resulting involuntary guilty plea to be disingenuous. Ralston concedes that his claims "were predominantly litigated during a post-sentence motion hearing held on

---

[11] Generally, "we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa. Super. 2022) (citation and internal quotation marks omitted). "As to legal questions, we apply a *de novo* standard of review to the PCRA court's legal conclusions, and this Court may affirm a PCRA court's order on any legal basis." **Id.** (citations and internal quotation marks omitted).

December 22, 2014[]" and that, "as a result of the record that was previously developed, PCRA counsel offered the post-sentence motion hearing transcript into the record" at the PCRA hearing. (Ralston's Brief, at 17-18).

Pursuant to the PCRA, a judge shall order a hearing if a petition raises an issue of material fact. "However, the judge may deny a hearing on a specific issue of fact when a full and fair evidentiary hearing upon that issue was held at … any proceeding before or after trial." 42 Pa.C.S. § 9543(A)(2).

Here, while the trial court did not make findings after the conclusion of the PCRA hearing, it had already explained its finding that Ralston's same ineffective issues lacked merit after the "full and fair hearing was held" on their merits. 42 Pa.C.S. § 9543(A)(2). The argument that the court did not address Ralston's issues is not persuasive.

Next, we turn to a consideration of Ralston's claim that the court erred in failing to grant relief on the issues.

**D.**

Ralston argues that counsel was ineffective for his failure to properly investigate his case and prepare for trial, resulting in him being "forced" to enter an open guilty plea. (***See*** Ralston's Brief, at 24). It is well-settled that:

> To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. The failure to meet any of these aspects of the ineffectiveness test results in the claim failing.

- 23 -

***Commonwealth v. Stultz***, 114 A.3d 865, 880 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1201 (Pa. 2015) (citations and quotation marks omitted).

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Pier***, 182 A.3d 476, 478 (Pa. Super. 2018) (citation and footnote omitted). "Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Id.*** (citation omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." ***Commonwealth v. Reid***, 117 A.3d 777, 783 (Pa. 2015) (internal citation omitted). "Moreover, the law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." ***Id.*** (citations, internal quotation marks and brackets omitted).

The trial court observed that:

> Prior to accepting [Ralston]'s guilty plea, the [c]ourt engaged in a guilty plea colloquy with [him] in which [Ralston] unequivocally stated that his open guilty plea was entered knowingly, voluntarily, and intelligently. [Ralston] further verified that his guilty plea was knowing and voluntary when he testified at the hearing on his post sentence motions …. Thus, assuming *arguendo*

that counsel's performance was deficient, [Ralston]'s own testimony indicates that counsel's alleged deficiencies did not impact the knowing and voluntary nature of his plea.

(Trial Ct. Op., 2/11/15, at 3); (Trial Ct. Op., 5/18/15, at 11).

Our review of the record confirms the trial court's conclusion. Ralston affirmed that he was knowingly, voluntarily and intelligently entering the guilty plea. (**See** N.T. Plea, 4/30/14, at 8). He stated that he understood that the period of incarceration would be solely within the court's discretion. (**See id.**). When asked if he understood the factual basis for the plea, the elements of the charged crimes, that he was presumed innocent and his trial rights, Ralston answered that he did. (**See id.** at 8-10). He stated that he had no questions and that he had a sufficient opportunity to discuss the plea agreement with counsel. (**See id.** at 11). Ralston also filled out a written plea colloquy in which he admitted his guilt, that he was entering the plea of his own free will and that he was satisfied with counsel's representation. (**See** (Guilty Plea Colloquy, 4/30/14, at ¶¶ 39-45). Ralston "is bound by his statements made during the colloquy." **Reid**, 117 A.3d 783 (citation omitted). Ralston fails to prove that counsel's advice led to an unknowing and involuntary plea where the record confirms the contrary. Further, plea counsel had a reasonable basis for recommending that Ralston take the plea offer where he was charged with 52 counts related to illegal contact with children. Counsel testified that he was "practically convinced a hundred percent that [Ralston] was going to be found guilty if we went to trial."

Accordingly, Ralston has failed to plead and prove that counsel's ineffective assistance[12] resulted in him entering an involuntary, unknowing plea.

Judgment of sentence affirmed.

_____

[12] Ralston argues that counsel had no reasonable basis not to investigate similar charges against him in Huntingdon County that involved the same Victim where members of the Clearfield County Public Defenders' Office testified that they were aware of the charges. (**See** Ralston's Brief, at 23); (N.T. Post-Sentence Motion Hearing, at RR 48, 58, 71-72, 94, 111). He argues that the Victim's conflicting statements about in which county the abuse occurred would have resulted in charges not being filed in Clearfield County. (**See** Ralston's Brief, at 23-24). Ralston provides absolutely no legal authority for his claim that an attorney's failure to investigate charges in a neighboring county amounts to ineffective assistance. Even assuming *arguendo* that counsel should have investigated the related charges, there was a reasonable basis for not doing so where there was sufficient evidence to support the charges in Clearfield County. Further, Ralston can show no prejudice where credibility is a jury question so he cannot prove that a challenge to the Victim's credibility would have resulted in a lower sentence.

Similarly, Ralston claims that counsel's decision not to file a pre-trial motion to suppress his confession was ineffective where there was no reasonable basis for not doing so. However, as acknowledged by Ralston, he cannot prove that he suffered any prejudice from counsel's decision since it is unknown whether the court would have granted the motion. In fact, even had the court granted it, it is not clear that counsel still would not have advised him to take a guilty plea or, if they had gone to trial, whether it would have affected the outcome of the proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/2023