J-A21042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CORLEY | : | |
| | : | |
| Appellant | : | No. 2597 EDA 2021 |

Appeal from the PCRA Order Entered December 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007418-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CORLEY | : | |
| | : | |
| Appellant | : | No. 29 EDA 2022 |

Appeal from the PCRA Order Entered December 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007422-2016

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 16, 2023**

Christopher Corley (Appellant) appeals from the orders[1] entered in the

Philadelphia County Court of Common Pleas denying his first timely petition

---

[1] Related to the crimes at issue in this appeal, Appellant was charged under two criminal dockets. He filed two separate notices of appeal at both and has therefore complied with ***Commonwealth v. Walker***, 185 A.3d 969, 977 (Pa. 2018) (separate notices of appeal must be filed when a single order resolves

*(Footnote Continued Next Page)*

filed under the Post-Conviction Relief Act (PCRA).[2] In 2017, Appellant was convicted of first-degree murder, conspiracy to commit first-degree murder,[3] and related charges, and sentenced to two terms of life imprisonment and a consecutive term of 10 to 20 years' imprisonment. On appeal, he asserts the PCRA court erred when it dismissed, without holding an evidentiary hearing, his challenge to trial counsel's effectiveness for failing to object to the trial court's jury instruction defining reasonable doubt. We deny relief on his claims, but we *sua sponte* determine the life without parole sentence for conspiracy to commit murder was illegal, and thus vacate it.[4] Accordingly, we affirm the PCRA court's order, vacate Appellant's judgment of sentence in part, and remand to the trial court for resentencing.

The PCRA court summarized the underlying facts of this case as follows:

> [On April 17, 2014, Appellant] and four co-conspirators — Nysare Alston, Deforest Johnson, Brandon McKelvey, and Kenneth

_____

issues arising on more than one trial court docket), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed). This Court consolidated these appeals *sua sponte* on January 21, 2022. Order, 1/21/22.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] 18 Pa.C.S. §§ 2502(a) and 903(a), respectively.

[4] **See** 18 Pa.C.S. § 1102(c).

Thomas[5] — lured the decedent, Carl Johnson, and surviving victim Ryan Hardy to the Strawberry Mansion neighborhood of Philadelphia under the pretense of buying cocaine. Instead, [Appellant and his co-conspirators] abducted the victims from [Victim] Johnson's [car]. The victims were bound with duct tape and placed in a Ford van driven by [Appellant]. The co-conspirators stole approximately $20,000 worth of cocaine, a television set, and jewelry.

After doing so, co-defendant McKelvey shot [Victim] Johnson and [Victim] Hardy using a 9mm firearm[,] which belonged to [Appellant. Victim] Johnson died at the scene. [Victim] Hardy suffered two gunshot wounds but survived. Following the shooting, the co-conspirators reconvened at McKelvey's house in [W]est Philadelphia to divide the proceeds of the robbery and abandoned [Victim] Johnson's [car] after washing it in bleach.

PCRA Ct. Op. 1/31/22, at 2.

_____

[5] Appellant had a joint trial with co-conspirators Alston and McKelvey, who were found guilty of, *inter alia*, first-degree murder, attempted murder, and conspiracy to commit first-degree murder. N.T., 11/16/17, at 4, 6, 10, 12. Co-conspirator Johnson was tried separately after the trial court granted his motion for severance, and was found guilty of second-degree murder, kidnapping, robbery, and related offenses. ***Commonwealth v. Johnson***, 1991 EDA 2019 (unpub. memo. at 1-2) (Pa. Super. June 9, 2020), *appeal denied*, 201 EAL 2020 (Pa. Feb. 23, 2021); Trial Ct. Op. 6/6/18, at 3 n.1. Co-conspirator Thomas entered an open guilty plea to third-degree murder, kidnapping, conspiracy to commit robbery, firearms charges, aggravated assault, possession of an instrument of crime (PIC), and avoiding apprehension. Trial Ct. Op. 6/6/18, at 3 n.1. Thomas testified at the instant trial pursuant to an agreement with the Commonwealth, and at the time of trial, had not yet been sentenced. ***Id.***

We also note that although the cover of the November 16, 2017, transcript identifies the proceeding as "Volume 1" of trial, that proceeding was the last day of trial, and includes the jury's verdicts. The covers for the November 9th, 13th, and 15th trial transcripts similarly identify those proceeding as "Trial (Jury) Volume 1." To avoid confusion, we cite these trial transcripts by their dates only, without reference to the purported volume number.

Regarding Victim Johnson, Appellant was charged at Criminal Docket No. CP-51-CR-0007418-2016 with one count each of first-degree murder, conspiracy, robbery, kidnapping, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and PIC.[6] Relating to Victim Hardy, Appellant was charged at Criminal Docket No. CP-51-CR-0007422-2016 with attempted murder, aggravated assault, robbery, and kidnapping.[7]

On November 7, 2017, a jury trial for both criminal dockets commenced, for Appellant and co-conspirators Alston and McKelvey. The Commonwealth presented the testimony of, *inter alia*, co-conspirator Thomas, who testified to the facts summarized above. He stated that Appellant: (1) agreed to kidnap, torture, and if necessary, kill Victim Johnson; (2) was present during preparations to execute this plan; and (3) was on the phone with co-conspirator Thomas over the course of the crime. N.T., 11/8/17, at 97-101, 103-04, 108-09, 115, 121, 133, 144, 146, 165.

On November 16, 2017, the jury found Appellant guilty of the above offenses. That same day, the trial court sentenced Appellant to two concurrent terms of life without parole for his convictions of first-degree

---

[6] 18 Pa.C.S. §§ 3701(a)(1)(i), 2901(a)(1), 6106(a)(1), 6108, 907(a), and 903(c), respectively.

Appellant was also charged with possession of a firearm (prohibited persons), 18 Pa.C.S. § 6105(a)(1). The Commonwealth *nolle prossed* this charge at trial. **See** N.T., 11/16/17, at 22-23.

[7] 18 Pa.C.S. §§ 901(a), 2702(a).

murder and conspiracy to commit first-degree murder, and a consecutive term of 10 to 20 years' incarceration for attempted murder.[8]  Appellant filed a post-sentence motion, which was denied on November 27th.

This Court affirmed Appellant's judgment of sentence on May 13, 2019. ***Commonwealth v. Corley***, 209 EDA 2018 (unpub. memo.) (Pa. Super. May 13, 2019), *appeal denied*, 292 EAL 2019 (Sept. 24, 2019).  Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on September 24th.  ***See id.***

Appellant filed the underlying timely *pro se* PCRA petition, his first, on October 22, 2020.  The PCRA court appointed Coley O. Reynolds, Esquire, who filed an amended PCRA petition on May 26, 2021, where he raised a claim of ineffective assistance of trial counsel for failing to object to a jury instruction defining reasonable doubt.  Appellant's Amended Post-Conviction Relief Act Petition, 5/26/21, at 4.  The Commonwealth filed a motion to dismiss Appellant's petition on August 19th.  The PCRA court filed a notice to dismiss without a hearing pursuant to Pa.R.Crim.P. 907 on October 29th and dismissed Appellant's petition on December 9th.  Appellant filed this timely notice of appeal.  The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Nevertheless, he filed one on January 17, 2022.

---

[8] Appellant's conviction for aggravated assault merged for purposes of sentencing and the trial court imposed no further penalty on the remaining charges.

Appellant raises the following on appeal:

Did the PCRA court err by denying Appellant an evidentiary hearing and post-conviction relief on his claim alleging trial counsel provided ineffective assistance of counsel by not objecting to the trial court's jury instruction on reasonable doubt because the instruction improperly elevated the level of reasonable doubt required for acquittal in violation of the due process clause of the Fourteenth Amendment to the United States Constitution[?]

Appellant's Brief at 3 (some capitalization omitted).

In his sole claim, Appellant argues trial counsel was ineffective for not objecting to the trial court's reasonable doubt jury instruction and the PCRA court erred when it did not grant an evidentiary hearing on this issue. Appellant's Brief at 8.

Preliminarily, we note the relevant standard of review for denial of a PCRA petition:

We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

With respect to the PCRA's timeliness requirements, this Court has explained:

> Section 9545 of the PCRA expressly states that a PCRA petition "shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545. A judgment of sentence becomes final at the conclusion of direct review, including discretionary review, or at the expiration of time for seeking the review. [42 Pa.C.S.] § 9545(b)(3). "Our courts have strictly interpreted this requirement as creating a jurisdictional deadline." A court may not address the merits of the issues raised if the PCRA petition was not timely filed.

***Commonwealth v. Whiteman***, 204 A.3d 448, 450 (Pa. Super. 2019) (some citations omitted).

In the instant case, this Court affirmed Appellant's judgment of sentence on May 13, 2019, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on September 24th. ***See Corley***, 209 EDA 2018, *appeal denied*, 292 EAL 2019. Therefore, he had 90 days — or until December 23rd — to file a *writ of certiorari* with the United States Supreme Court. ***See*** S.Ct.R. 13(1). Appellant did not, and thus, his judgment of sentence became final on December 23rd. Appellant then had one year, or until December 23, 2020, to file a PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). Appellant filed the present petition on October 22, 2020, and as such, it is timely.

Appellant challenges the PCRA court's dismissal of his petition without an evidentiary hearing on his ineffectiveness claim. We note counsel is presumed to have rendered effective assistance. ***Commonwealth v. Charleston***, 94 A.3d 1012, 1019 (Pa. Super. 2014) (citation omitted). To prevail on an ineffectiveness claim, the petitioner must establish the following factors: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner was

- 7 -

prejudiced. *Id.* at 1020. Further, the defendant's claims "must meet all three prongs of the test for ineffectiveness[;] if the court can determine without an evidentiary hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing." *Id.* (citation omitted).

Where a court has dismissed a PCRA petition without an evidentiary hearing, we review the decision for an abuse of discretion:

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Johnson*, 139 A.3d 1257, 1273 (Pa. 2016).

We are guided by the following. "[I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instruction, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014)

- 8 -

(citations omitted). Thus, this Court will not find jury instructions erroneous when, taken as a whole, they adequately and accurately set forth the applicable law. ***Commonwealth v. Daniels***, 963 A.2d 409, 430 (Pa. 2009).

In the present matter, at the conclusion of trial, the court gave the jury the following instruction regarding the "reasonable doubt" standard:

> Although the Commonwealth has the burden of proving that [Appellant] is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty nor must the Commonwealth demonstrate the complete impossibility of innocence.
>
> A reasonable doubt is a doubt that would cause a reasonably sensible and careful person to pause, hesitate or refrain from acting upon a matter of highest importance to that person's own affairs or to that person's own best interests.
>
> A reasonable doubt must fairly arise out of the evidence presented or out of the lack of evidence presented with respect to some element of each of the crimes charged. A reasonable doubt must be a real doubt. It may not be an imagined one nor may it be a doubt manufactured by you in order to avoid carrying out an unpleasant duty.
>
> To summarize: You may not find [Appellant] guilty based upon a mere suspicion of guilt. The Commonwealth has the burden of proving [Appellant] guilty beyond a reasonable doubt. If the Commonwealth has met its burden, then [Appellant] is no longer presumed to be innocent and you should find him guilty. However, if the Commonwealth has not met its burden, then you must find [Appellant] not guilty.
>
> What I tell people, ladies and gentlemen, is this, if a reasonable, sensible person were making a really important life decision, not an everyday decision, what to eat, what to wear, where to go, if you screw that up, it has no effect on your life really but a major life-changing decision, whether to pick up your whole family and move across the country, whether to marry, whether to join the Armed Forces, whether to have serious surgery, the kind of decision that a person, a reasonable, sensible person is going to think hard about before they make it, if that

> reasonable, sensible person gathers the information to help them to make this decision and deliberates upon it, considers all the various aspects but then in the end, pauses, hesitates, just cannot go forward in acting, that is what we call a reasonable doubt.

N.T., 11/15/17, at 8-10.

Returning to Appellant's argument, he asserts the above jury instruction improperly elevated the reasonable doubt standard by lowering the Commonwealth's burden of proof and making it "overly easy" for the jury to "resolve or simply ignore" any reasonable doubt. *See* Appellant's Brief at 11, 13. Appellant alleges the trial court's instruction

> inserted a requirement that any doubt worthy of acquittal must be so serious and grave that it would rise to the level of causing a person not to pick up the whole family and move across the country, marry, join the Armed Forces, and not to have needed serious surgery.

*Id.* at 12-13. Appellant relies on *Cage v. Louisiana*, 498 U.S. 39 (1990), which held that "use of the words 'substantial' and 'grave'" improperly lowered the prosecution's burden of proof. *Id.* at 14. He maintains the jury instruction in the present case is "no different[.]" *Id.* Appellant then argues the instruction used an "improper example" which "require[d] a substantial doubt[,]" instead of a reasonable doubt. *Id.* at 14-15, *relying on inter alia*, *Taylor v. Kentucky*, 436 U.S. 478, 488 (1978) (trial court's jury instruction defining reasonable doubt as "substantial doubt" is confusing). Appellant also claims the instruction in this case is "similar" to the one found unconstitutional in the federal decision *Brooks v. Gilmore*, 2017 WL 3475475 (E.D. Pa. 2017) (unreported). Appellant's Brief at 15. Specifically, Appellant insists the

- 10 -

instruction here "comprise[d] about half of what was said" in the unconstitutional **Brooks** instruction. **Id.** at 17.

Appellant also argues the instruction improperly "directed [the jury] to rely exclusively" on whether it would "refrain from acting" or "mov[e] beyond" its reasonable doubt when deciding guilt. Appellant's Brief at 18-19. Instead, he maintains the court should have instructed the jurors to acquit Appellant if they "pause[d]" or "hesitate[d]." **Id.** Appellant avers counsel had a duty to object to this "highly unusual" instruction. **Id.** at 19, 22. Lastly, Appellant insists that since the jury instruction contained a "structural" defect, prejudice is presumed. **Id.** at 24. Alternatively, Appellant maintains that he suffered prejudice because the "only" evidence of his guilt came from corrupt and polluted sources, insisting there was a "reasonable probability" that the jury may have had reasonable doubts as to his guilt. **Id.**

Relevant to Appellant's argument, we briefly summarize **Cage** and **Brooks**. In **Cage**, the defendant was convicted of first-degree murder and sentenced to death. **Cage**, 498 U.S. at 39. He appealed to the Supreme Court of Louisiana, arguing, *inter alia*, that the trial court gave a constitutionally defective reasonable doubt instruction. **Id.** at 40. The instruction stated, in relevant part:

> This doubt . . . must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. **It must be such doubt as would give rise to a grave uncertainty**, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. **It is an actual substantial doubt**. It is a doubt that a reasonable man can

seriously entertain. What is required is not an absolute or mathematical certainty, but a **moral certainty**.

*Id.* (emphasis in original). The Louisiana Supreme Court rejected the defendant's argument, finding that when read as a whole, the instruction properly relayed the reasonable doubt standard. *Id.* at 40-41.

The Supreme Court of the United States granted the defendant *certiorari* on this claim, concluding that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard[.]" *Cage*, 498 U.S. at 41. Further, the Court determined that a "reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.* at 41.

In the present case, as the PCRA court points out, Appellant mischaracterizes the trial court's reasonable doubt instruction. The court explained:

> Despite [Appellant's] characterizations of [the] instruction, the court at no point used the phrases "substantial doubt" or "grave uncertainty" and certainly did not direct the jury to reach a verdict based on moral clarity, but rather properly instructed the jury that a reasonable doubt must rise out of "the evidence presented or out of the lack of evidence presented."

*See* PCRA Ct. Op. at 6, *citing* N.T., 11/15/17, at 8-10. We agree with the PCRA court and conclude Appellant's assertions — that the instruction here is "no different" from that in *Cage*, and implied the need for a "substantial doubt" — is a blatant mischaracterization of the instruction. *See* Appellant's Brief at 14-15. As such, *Cage* is not applicable to the present facts.

Next, we examine **Brooks**. In this case, the defendant was convicted in the Philadelphia Court of Common Pleas of first-degree murder and related offenses. **Brooks**, 2017 WL 3475475, at *2. His judgment of sentence was affirmed on direct appeal and his PCRA petition was denied by the Court of Common Pleas. **Id.** The defendant then filed a petition for a writ of *habeas corpus* in the Eastern District of Pennsylvania, challenging, *inter alia*, the reasonable doubt jury instruction given at his trial. **Id.** His petition was denied, and he filed for a writ of *habeas corpus* in the Eastern District of Pennsylvania. In pertinent part, the challenged instruction stated:

> It's helpful to think about reasonable doubt in this manner. . . . Each one of you has someone in your life who's absolutely precious to you. If you were told by your precious one's physician that they had a life-threatening condition and that **the only known protocol or the best protocol** for that condition was an experimental surgery, you're very likely going to ask for a second opinion. You may even ask for a third opinion. You're probably going to research the condition, research the protocol. What's the surgery about? How does it work? You're going to do everything you can to get as much information as you can. You're going to call everybody you know in medicine: What do you know? What have you heard? Tell me where to go. But at some point the question will be called. If you go forward, it's not because you have moved beyond all doubt. There are no guarantees. If you go forward, it is because you have moved beyond all reasonable doubt.

**Id.** at **7-8 (emphasis added).

The federal court concluded that the instruction violated the defendant's due process rights. It stated the instruction employed the emotionally charged "precious ones" example affording "a single life-saving option for a

- 13 -

loved one[,]" thus elevating the level of doubt required for acquittal. ***Brooks***, 2017 WL 3475475, at **9-10. The court also opined:

> The problem is compounded by the fact that the trial judge structured the hypothetical in terms of the jury proceeding to take action on behalf of their family member, twice using the phrase "if you go forward . . . ." The Supreme Court has made clear, however, that a charge on reasonable doubt should be expressed "in terms of the kind of doubt that would make a person hesitate to act rather than the kind on which he would be willing to act." In the context of an otherwise sufficient charge, such error would not amount to a constitutional violation. But **taken in combination with the trial court's hypothetical here**, which would require an excessively high degree of doubt to reach an acquittal, the deficiency of the charge is clear. . . .

***Id.*** at **10-11 (emphasis added).

Once more, Appellant has mischaracterized the trial court's reasonable doubt instruction. The PCRA court stated the instruction here and the instruction in ***Brooks*** were distinguishable. PCRA Ct. Op. at 6. We agree. First, we note Appellant again embellishes the trial court's instruction to compare it to the instruction in ***Brooks***. He asserts the court referenced a "**needed** serious surgery" as opposed to merely "a serious surgery." Appellant's Brief at 13 (emphasis added); *compare* N.T., 11/15/17, at 10. We disagree with Appellant's contention that the trial court's single mention, of a "serious surgery" that one would think hard about, "comprises about half of what was said" in the ***Brooks*** instruction. ***See*** Appellant's Brief at 17. Ultimately, the instruction the trial court gave at Appellant's trial is substantially dissimilar to the unconstitutional instruction in ***Brooks***.

- 14 -

Regarding the language, to "mov[e] forward" in the instruction, we also find Appellant's comparison unavailing. While the trial court made this statement in its charge, it was dissimilar to the same phrase as it appeared in **Brooks**. The federal court in **Brooks** noted that the expression **in combination** with the specific "precious ones" hypothetical was problematic. **See Brooks**, 2017 WL 3475475, at **10-11. As we determine the trial court's use of the words "serious surgery" and "think[ing] hard" about a decision do not rise to issues of the **Brooks** instruction, the reference to "moving forward" does "not amount to a constitutional violation." **See id.** at *11.

Though Appellant relies on **Brooks**, we note that the Pennsylvania Supreme Court recently found a jury instruction, similar to that in **Brooks**, was "constitutionally defective." **See Commonwealth v. Drummond**, 285 A.3d 625, 628, 646 (Pa. 2022) (holding instructions like the "precious ones" charge in **Brooks** are likely to cause a jury to apply a diminished standard of proof, but counsel was not ineffective for not objecting because the Pennsylvania Superior Court previously affirmed sentences where the appellant challenged this instruction).[9] In any event, this new decision would still not entitle Appellant to relief. As stated above, the instruction in this case is distinguishable from the one in **Drummond** and **Brooks**.

---

[9] **Drummond** and **Brooks** both involved the same trial judge, who gave almost identical reasonable doubt jury instructions in each case. **See Drummond**, 285 A.3d at 631-32, 644; compare **Brooks** 2017 WL 3475475, at **7-8.

- 15 -

We agree with the PCRA court that Appellant's arguments have no merit. The court provided an instruction to the jury whereby it accurately described the reasonable doubt standard. The court's further explanation of the standard by way of example did not, as Appellant suggests, elevate the level of doubt needed for acquittal. *See* Appellant's Brief at 11, 13. Moreover, even if such a comparison could be made between the instructions, we would deny relief on the basis that at the time of his trial, this Court regularly rejected similar arguments relying on **Brooks**. **See Drummond**, 285 A.3d at 646. As the trial court properly determined that at least one of the ineffectiveness prongs could not be met, it did not err in dismissing Appellant's petition without a hearing. **See Charleston**, 94 A.3d at 1020. No relief is due.

Next, we *sua sponte* consider Appellant's life without parole sentence for conspiracy to commit murder. Under 18 Pa.C.S. § 1102(c), the maximum sentence for conspiracy to commit murder is 40 years where there is serious bodily injury and 20 years where there is no serious bodily injury.[10] **See** 18

---

[10] We note that pursuant to **Apprendi v. New Jersey**, 530 U.S. 466 (2000), to impose a 40-year maximum sentence under Section 1102(c), the jury must make a finding of serious bodily injury specific to the conspiracy to commit murder charge. **See Apprendi**, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (citation omitted); **Commonwealth v. Barnes**, 167 A.3d 110, 117-19 (Pa. Super. 2017) (the defendant could not be sentenced to the enhanced maximum of 40 years' incarceration for attempted murder pursuant to Section 1102(c) when: (1) the defendant was not charged
*(Footnote Continued Next Page)*

Pa.C.S. § 1102(c). Although Appellant has not raised an illegal sentencing claim, we may address it *sua sponte*. **See Commonwealth v. DiMatteo**, 177 A.3d 182, 192 (Pa. 2018) (reiterating general rule that legality of sentence can be reviewed in context of timely PCRA petition); **Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*) (challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court) (citation omitted). Further, "[w]here a case requires a correction of sentence, this Court has the option of either remanding for resentencing or amending the sentence directly." **Commonwealth v. Klein**, 795 A.2d 424, 430 (Pa. Super. 2002) (citation omitted).

The imposed sentence for conspiracy to commit murder exceeds the statutory maximum allowed, and as such is illegal and cannot stand. Accordingly, we vacate Appellant's life without parole sentence for conspiracy

_____

with "attempted murder resulting in serious bodily injury[;]" (2) the Commonwealth did not give the defendant notice that it "sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence[;]" (3) the issue of whether serious bodily injury occurred as a result of the attempted murder charge "was never submitted to the jury as an element of the crime or as a special interrogatory[;]" and (4) a finding of serious bodily injury as an element of a separate conviction at trial cannot "be used to infer that the jury found serious bodily injury for the attempted murder charge.") (citations omitted). **See also** 18 Pa.C.S. § 1102(c) (governing the statutory maximum sentences for both attempted murder and conspiracy to commit murder). Here, the verdict sheet does not include any question, nor any finding by the jury, as to whether the conspiracy resulted in serious bodily injury. **See** Verdict Report, 11/15/17, at 1.

to commit murder at Docket No. CP-51-CR-0007418-2016, and remand for resentencing on that count only. We do not disturb the remainder of Appellant's sentence.

Orders affirmed. Judgment of sentence vacated in part consistent with this memorandum. Case remanded with instructions. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/16/2023*